In re GEORGE RODMAN, INC., Debtor.

Thomas KENAN, Trustee, Plaintiff,

v.

FORT WORTH PIPE COMPANY, Defendant.

Bankruptcy No. Bk–82–02132.
Adv. No. 83–0631.

United States Bankruptcy Court,
W.D. Oklahoma.

May 11, 1984.

Thomas J. Kenan, Oklahoma City and Gary L. Morrissey, Oklahoma City, Okl., for debtor.

Elliott S. Garsek, Michael T. Watson and Dwayne Hoover of Barlow, Gardner, Tucker & Garsek, Fort Worth, Tex., for Fort Worth Pipe Co.

## MEMORANDUM OF DECISION AND ORDER

RICHARD L. BOHANON, Bankruptcy Judge.

This matter has been brought by the Trustee of this estate to recover an alleged preferential payment to the defendant, Fort Worth Pipe Company, pursuant to 11 U.S.C. § 547. Due to substantial stipulations the issue has been narrowed to a question of when a determination of "new value" is made for purposes of a contemporaneous exchange under § 547(c)(1).

The defendant was a supplier of goods and merchandise to the debtor for use in working on several oil and gas wells. Subsequently, due to non-payment for these items, Fort Worth caused liens to be filed.

During the ensuing period the debtor was able to secure new financing from two financial institutions. As part of the loan

agreement, the debtor was to pay the debts on wells secured by statutory liens of the defendant and have them released. Consequently, in August, 1982, the debtor paid Fort Worth the sum of $476,630 in consideration for the immediate release of liens on six wells, only one of which is at issue here.[1]

The Stidham well, from which the present controversy arises, was being drilled at the time of the release and evidently was believed to be an important and productive well by the debtor. However, this well proved to be a dry hole and was finally plugged as worthless. The debtor paid Fort Worth Pipe approximately $238,-842 in satisfaction of an antecedent debt which was secured by defendant's lien on this well. There is no dispute that the statutory lien filed against the Stidham well was valid. Moreover, the parties stipulate that the well and the oil and gas lease have no present value, but may have had some value at the time of the alleged preferential payment. Also, when the payment was made this well was still being drilled and it was impossible to determine at that time whether it would produce or not. Accordingly, we reach only the narrow question, for purposes of a preferential transfer, whether a contemporaneous exchange valuation is controlled by the intent of the parties at the time of the exchange, or whether the valuation is determined at the time of hearing the preference complaint, and thus subsequent to the actual time of transfer and payment.

Fort Worth relies on the language of § 547(c)(1) excepting from preference attacks transfers

"(1) to the extent that such transfer was
    (A) intended by the debtor and the
    creditor to or for whose benefit such
    transfer was made to be a contemporaneous exchange for new value given to
    the debtor; and
    (B) in fact a substantially contemporaneous exchange"

From this language it concludes that the parties intended the release of the lien to constitute new value when the payment was made and, regardless of the actual value, the parties intent should control.

■ The Trustee offers a different reading of § 547(c)(1) and basically asserts that the intent should focus on whether the *exchange* was intended to be contemporaneous and not whether the parties intended the contemporaneous exchange to be one of new value. Rather, asserts the Trustee, the Court should look to the effect of the transfer upon the creditors of the estate. We agree.

The Code defines "new value" at § 547(a)(2) to mean:

money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, but does not include an obligation substituted for an existing obligation.

Upon analysis this definition demands that there be a *quid pro quo* value exchange between the debtor and transferee. However, the transfer may not simply be a substitution for an existing obligation. The facts of this case present a unique situation unanticipated by the above definition. Therefore, we must decide if the exchange that took place falls within the statutory definition.

■ We construe the definition to essentially mean a transfer which has value in the economic sense. A transfer which may neither be void or voidable must, nevertheless, have some actual value or economic worth. A valid but valueless transfer falls outside the definition of "new value" for reasons more fully discussed below.

■ In the final analysis, a preference must be a transfer which enables one creditor to receive payment of a greater proportion of its claim against the estate than

---

**1.** As a result of joint stipulation issues as to the liens and preference payments on other wells     have been resolved.

would be received had the transfer never been made and had it participated in distribution of the estate assets. *See In re Kelley,* 3 B.R. 651 (Bankr.E.D.Tenn.1980). Basic to the very concept of the Bankruptcy Code and pertinent when dealing with preference matters is the underlying goal of equality of distribution. *Matter of Duffy,* 3 B.R. 263 (Bankr.S.D.N.Y.1980). *See also* H.Rep. No. 595, 95th Cong., 1st Sess. 177, 178 (1977) *reprinted in* U.S.Code Cong. & Admin.News 1978, p. 5787. *In re Arnett,* 13 B.R. 267 (Bankr.E.D.Tenn.1981).

The primary focus of case law on this section relates more to what is a "contemporaneous exchange" of new value. *See e.g., In re General Office Furniture Wholesalers, Inc.,* 37 B.R. 180 (Bankr.E.D. Va.1984); *In re Lyon,* 35 B.R. 759 (Bankr. D.Kan.1982); *Butz v. Pingel,* 17 B.R. 236 (Bankr.S.D.Ohio 1982); *compare National City Bank v. Hotchkiss,* 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913) *with Dean v. Davis,* 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917). None of the cases directly address the narrow question before this Court, but by way of analogy we feel comfortable that these holdings support our decision here.

█ First of all, it is true that the intent of the parties at the outset of the transaction should be given due consideration. *Dean v. Davis, supra; In re T.I. Swartz Clothiers, Inc.,* 15 B.R. 590 (Bankr.E.D.Va. 1981). However, a finding of *intent* that the transfer be contemporaneous is not dispositive since the court must also find that in fact there *actually* was a contemporaneous transfer. 11 U.S.C. § 547(c)(1)(B); *see also Butz v. Pingel, supra; Matter of Christian,* 8 B.R. 816 (Bankr.M.D.Fla. 1981). Consequently, "intent" becomes irrelevant when the Court seeks to determine if *in fact,* the exchange was contemporaneous.

Secondly, the terms of § 547(c)(1) must be read together such that "intended to be a contemporaneous exchange" and "new value given" will have a direct relationship. Accordingly, the inference in § 547(c)(1)(B) is that "in fact a substantially contemporaneous exchange" means substantially contemporaneous exchange *for new value given.* If there is a determination that the exchange was not substantially contemporaneous a finding of new value becomes meritless. Likewise, a contemporaneous exchange, standing alone, will not suffice unless the exchange was for new value. In making this determination the Court necessarily must make a retrospective determination since the intent of the parties is not the sole test for either determining contemporaneousness or new value. When the above determination is coupled with the goal of equality of distribution to creditors the retrospective evaluation of the exchange necessarily follows.

Finally, the theory behind the exception to the preference section is that there has been a fair exchange which caused no diminution to the estate. *In re Johnson,* 25 B.R. 889 (Bankr.E.D.Tenn.1982); *In re Duffy, supra; In re O'Neill Enterprises, Inc.,* 359 F.Supp. 940 (D.W.D.Va.1973); *see also* 9A Am.Jur. *Bankruptcy* § 551 at 154–157 (2d ed. 1980). When a creditor gives new value in exchange for a payment from the debtor there has occurred no depletion to the subsequent estate detrimental to other creditors. But if there is only some "intent" to give new value, and subsequently it is determined that actually there was never any new value given for the payment then the estate is depleted and other creditors are discriminated against in favor of that creditor who received the payment. Thus, the "intent theory" becomes not only problematical but violates the spirit of the equality of distribution principle.

We note also that the Code supports our view that the intent of the parties that new value be given is subject to examination by the Court. Section 506(a) says that "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." The legislative history of this section provides further clarification

that a value given at one point in a proceeding may not be binding for purposes of a subsequent proceeding. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 68 (1978) *reprinted in* U.S.Code Cong. & Admin.News 1978, p. 5854.

In enacting the preference section, Congress' concern was primarily with assuring equality of distribution:

> [A] creditor's state of mind has nothing whatsoever to do with the policy of equality of distribution.... To argue that the creditor's state of mind is an important element of a preference and that creditors should not be required to disgorge what they took in supposed innocence is to ignore the strong bankruptcy policy of equality among creditors. H.Rep. No. 595, 95th Cong. 1st Sess. 178 (1977) *reprinted in* U.S.Code Cong. & Admin. News 1978 p. 6139.

Obviously to allow the intent of the creditor to determine value would undermine § 506(a), and such proposition must be rejected.

Accordingly, we hold that an intent that there be a contemporaneous exchange of new value does not prevent the Court from subsequently finding that no "new value" was ever actually given to the debtor. Rather, the Court upon a retrospective determination may conclude that a contemporaneous exchange was not for new value and the 547(c)(1)(A), (B) exception inapplicable.

Thus, the payment to Fort Worth Pipe Company is declared a preferential transfer and may properly be avoided by the Trustee pursuant to § 547 of the Bankruptcy Code.

Judgment will be entered separately.