BALDOCK, Circuit Judge.
 

 Fort Worth Pipe Company (appellant) ap
 
 *126
 
 peals directly
 
 [1]
 
 from a judgment of the United States Bankruptcy Court for the Western District of Oklahoma. The bankruptcy court ruled that a payment by the debtor, George Rodman, Inc. (debtor), for the release of appellant’s lien on one of debtor’s wells was a preferential transfer and could be avoided by the trustee, Thomas Kenan (trustee). The well was in the process of being drilled at the time of the release, was later determined to be nonproductive, and was “plugged.” The bankruptcy court determined that because the well was ultimately found to be worthless, no “new value” was ever given to the debt- or as required by 11 U.S.C. § 547(c)(1).
 
 In re George Rodman, Inc.,
 
 39 B.R. 855, 859 (Bankr.W.D.Okla.1984). Because we hold that a valuation of the transfer is not required by § 547(c)(1), we reverse the decision of the bankruptcy court.
 

 The Facts
 

 The pertinent facts in this case are not in dispute. Appellant Fort Worth Pipe Company supplied materials to the debtor for use in drilling oil and gas wells in Oklahoma. Because of money owed for these materials, appellant caused materialmen’s liens to be filed on certain wells, including the Stidham Well which is the subject of this dispute. The lien on the Stidham well was properly perfected pursuant to 42 Okl. Stat.Ann. § 142 (1981), and its validity is not in dispute. The debtor owed appellant approximately $238,842 for materials supplied for use on this well. The well was expected to produce oil and gas, and the debtor was able to obtain a loan on the condition that the lien on the well be released. On August 9,1982, the debtor paid appellant the amount owed on the well, and the lien on the well was released. The parties agree that the well had no value at the time of the adversary proceeding, but also agree that it may have had some value at the time of payment. The well was plugged on August 24, 1982.
 

 An involuntary bankruptcy proceeding was initiated against the debtor on November 1, 1982. On July 5, 1983, the trustee brought an adversary proceeding pursuant to Part IY of the Bankruptcy Rules (Bankr.R. 7001-7087), arguing that the payment for the release of the lien is a preferential transfer pursuant to 11 U.S.C. § 547(b).
 
 [2]
 
 Appellant defended the transfer by asserting that it is not a voidable preference because it comes within the exception provided by § 547(c)(1).
 
 [3]
 
 The bankruptcy court rejected this argument, ruling that “[a] valid but valueless transfer falls outside the definition of ‘new value.’ ” 39 B.R. at 857. The court found the transfer valueless by looking at the well’s value at the time of the adversary hearing.
 

 
 *127
 

 The Issues
 

 The first issue presented by this appeal, and the only issue decided by the bankruptcy court in the adversary proceeding, is whether § 547(c)(1) requires a valuation of a transfer at the time of the adversary proceeding. Appellant also argues, for the first time on appeal, that the transfer comes within another exception by virtue of 11 U.S.C. § 547(c)(6). Because of our holding on the first issue, we do not reach this second issue.
 

 Legal Discussion
 

 In general, a “preference” exists when a debtor makes payment or other transfer to a certain creditor or creditors, and not to others. 4 L. King, Collier on Bankruptcy § 547.01 (15th ed. 1985). Such favoritism is prohibited by 11 U.S.C. § 547(b) when a debtor is in bankruptcy. In order to constitute a preference, the following elements must be satisfied:
 
 [4]
 
 (1) a transfer of the debtor’s property to a creditor, (2) for an antecedent debt owed by the debtor, (3) made while the debtor was insolvent, (4) made within 90 days before the date of filing the petition in bankruptcy, and (5) which enables the creditor to receive more than it would have received if the case were a Chapter 7 case (liquidation), if the transfer had not been made, and if the creditor received payment to the extent permitted by Title 11. The parties do not dispute that the five statutory requirements for an avoidable transfer under § 547(b) are met here.
 

 Not all transfers by a debtor within 90 days of a bankruptcy petition are deemed harmful to the debtor’s estate. 11 U.S.C. § 547(c) provides a list of exceptions to the trustee’s avoidance power. The provision relied on by appellant is contained in § 547(c)(1) and excludes from the preference definition those transfers that are intended to be “a contemporaneous exchange for new value given to the debtor,” and which, in fact, constitute a “substantially contemporaneous exchange.” “New value” is defined in § 547(a)(2) to include:
 
 [5]
 

 money or money’s worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.
 

 The phrase “release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law” is the portion of the definition that is relevant to this case. Appellant asserts that the release of the lien on the Stidham Well comes within this portion of the definition of “new value.” Appellant considers itself to be a “transferee” of property because of its release of the lien. The bankruptcy court ruled that the definition requires “that there be a
 
 quid pro quo
 
 value exchange between the debtor and transferee.” 39 B.R. at 857. It looked to the well’s value at the time of the adversary proceeding, found that it was worthless, and concluded that there was no
 
 quid pro quo
 
 exchange. The court stated that “[a] valid but valueless transfer falls outside the definition of ‘new value’....”
 
 Id.
 

 We are satisfied that the debtor’s payment to appellant and appellant’s simultaneous release of the lien on the Stidham Well, which occurred within the 90 day preference period, represents a contemporaneous exchange for new value. There
 
 *128
 
 was a release by a transferee
 
 [6]
 
 (appellant) of property
 
 [7]
 
 (the lien) previously transferred to such transferee. No evidence has been presented that the transaction is void or voidable by the debtor or the trustee under any applicable law. The exchange, therefore, satisfies the literal requirements of the definition of “new value.” Nevertheless, the bankruptcy court found that the exchange for new value did not constitute “new value” by implying a requirement that the transfer have value (“a
 
 quid pro quo
 
 value exchange”).
 

 The plain language of the definition does not require the valuation of the property transferred. We have examined §§ 547(c) and 547(a)(2) in the context of Chapter 5 and the Bankruptcy Code as a whole and cannot conclude that a computation of the value of the exchange is mandated.
 

 There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning.
 

 Perry v. Commerce Loan Co.,
 
 383 U.S. 392, 400, 86 S.Ct. 852, 857, 15 L.Ed.2d 827 (1966), quoting
 
 United States v. American Trucking Assns.,
 
 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). While resort to legislative history is unnecessary and inappropriate when a statute is clear and unambiguous on its face,
 
 [8]
 

 United States v. Richards,
 
 583 F.2d 491, 495 (10th Cir.1978), we are aware that the language used throughout the Bankruptcy Code is complex and specialized and therefore particular caution is required. Nothing in the legislative history of these statutes, however, would warrant a departure from the plain meaning of the statute and permit the insertion of a valuation requirement.
 
 See
 
 S.Rep. No. 95-989, 95th Cong. 2nd Sess.
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad. News 5787, 5873-75 and H.Rep. No. 95-595, 95th Cong. 2nd Sess.
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6328-31.
 

 Although the value of the exchange is not a consideration for purposes of § 547(c)(1), the valuation of a transfer is required by the Bankruptcy Code’s fraud provisions contained in 11 U.S.C. § 548(a)(2)(A).
 
 [9]
 
 This statute, in part, provides for the avoidance of any transfer when the debtor receives less than a reasonably equivalent value in exchange. Fraud was neither argued by the parties nor considered by the bankruptcy court and, therefore, is not an issue in this case.
 

 Accordingly, the judgment of the bankruptcy court is reversed and remanded.
 

 [1]
 

 . 28 U.S.C. § 1293(b) (1985) provides for a direct appeal from the bankruptcy court when the parties agree to such appeal. The parties in this case agreed to the present appeal.
 

 [2]
 

 . Section 547(b) provides:
 

 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
 

 (1) to or for the benefit of a creditor;
 

 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 

 (3) made while the debtor was insolvent;
 

 (4) made—
 

 (A) on or within 90 days before the date of the filing of the petition; or
 

 (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—
 

 (i) was an insider; and
 

 (ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and
 

 (5)that enables such creditor to receive more than such creditor would receive if—
 

 (A) the case were a case under chapter 7 of this title;
 

 (B) the transfer had not been made; and
 

 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 

 [3]
 

 .Section 547(c) contains the following exception:
 

 (c) The trustee may not avoid under this section a transfer—
 

 (1) to the extent that such transfer was
 

 (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
 

 (B) in fact a substantially contemporaneous exchange.
 

 [4]
 

 . These elements constitute a summary of those elements listed in the statute that are applicable to the facts in this case.
 

 [5]
 

 . This is the definition of "new value” as amended July 10, 1984. The amendment added “including proceeds of such property,” after “law.” While this change in the statute will not affect this case, we cite the amended version only because an appellate court should "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.”
 
 Bradley v. Richmond School Board,
 
 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).
 

 [6]
 

 . The Bankruptcy Code defines "transfer” to include "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.” 11 U.S.C. § 101(48). This broad definition encompasses the creation and release of liens.
 
 See, e.g., In re Conner,
 
 733 F.2d 1560, 1562 (11th Cir.1984). Thus, the appellant was a "transferee” at the time the lien on the well was released.
 

 [7]
 

 . Oklahoma defines a lien as a proprietary interest and a property right.
 
 Williamson v. Winningham,
 
 199 Okl. 393, 186 P.2d 644, 650 (1947) and
 
 Young v. J.A. Young Machine and Supply Co.,
 
 203 Okl. 595, 224 P.2d 971, 973 (1950).
 

 [8]
 

 . A common form of ambiguity exists when the words used have more than one meaning. An ambiguity also may be present when there is an unusual use of otherwise unambiguous words, e.g., terms of art. A third form of ambiguity may arise when the purpose, intent or object of the statute cannot be ascertained from the language employed therein. Thus, it may be proper to refer to legislative history when the plain meaning of the words used lead to an irrational or absurd result. Nevertheless, the mere existence of a dispute over the interpretation of a statute, in the absence of an ambiguity, should not give rise to an analysis of its legislative history.
 

 [9]
 

 .11 U.S.C. § 548(a)(2)(A) provides as follows: The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
 

 (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation.