**In re NUCORP ENERGY, INC., an Ohio corporation, and its Affiliates, Debtor.**

**Milton FREDMAN, Co–Liquidating Trustee for the Nucorp Liquidating Trust, Plaintiff,**

v.

**MILCHEM, INC., a Delaware corporation, Defendant.**

**Bankruptcy No. 82–03106–K11. Adv. No. C84–0024–P11.**

United States Bankruptcy Court, S.D. California.

Dec. 8, 1987.

Ali M.M. Mojdehi, MacDonald, Halsted & Laybourne, San Diego, Cal., for plaintiff.

Gloria F. Tobor, Houston, Tex., for defendant.

Larry A. Ford, Nucorp Energy, San Diego, Cal., for Nucorp Energy, Inc.

John W. Cutchin, San Diego, Cal., for defendant.

## MEMORANDUM DECISION

LOUISE DeCARL MALUGEN,
Bankruptcy Judge.

Milton Fredman, on behalf of the Nucorp Estates, has brought this action, seeking to recover a preference under 11 U.S.C. § 547 in the amount of $101,681.57. Milchem resists the action, arguing that certain exceptions under § 547(c) apply. The facts are not greatly in dispute.

In December 1981, debtor became the operator of an oil well (Martin Praus Well No. 1) located in North Dakota. Debtor employed Milchem to provide materials and services to the well, commencing December 12, 1981, and ending February 24, 1982. The Martin Praus well was plugged and abandoned on February 23, 1982. Debtor and its subsidiaries filed for protection under Chapter 11 on July 27, 1982. During the 90 days prior to filing for relief, debtor paid $101,681.57 to Milchem in three payments. At the time the payments were made, Milchem had taken no action to perfect liens on the well. Thus, Milchem did not release any existing lien upon accepting the payments.

Fredman argues that at the time the payment was made the well had no monetary value and, consequently, no "new value" was given, as defined in § 547(a)(2). Milchem argues that forbearance from asserting its lien is sufficient "new value" to bring it within the § 547(c)(1) exception or, alternatively, § 547(c)(6). In addition, Milchem argues that its lien is unavoidable under § 547(c)(6).

## ISSUES

I. Whether forbearance from asserting a statutory lien constitutes new value under § 547(a)(2).

II. Whether the payment from debtor to Milchem may be avoided under § 547(c)(6).

## DISCUSSION

### I.

11 U.S.C. § 547(a)(2) provides:

"New value" means money or money's worth in goods, services or new credit or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation; ....

Several courts in applying § 547(a)(2) have concluded that foregoing the right to per-

fect a lien is not the exchanging of new value within the meaning of the statute. *In re Matter of Georgia Steel, Inc.,* 56 B.R. 509, 522 (Bankr.M.D.Ga.1985); *In re Cimarron Oil Co., Inc.,* 71 B.R. 1005, 1009 (N.D.Tex.1987). In each of these cases, the courts determined that the waiver of an inchoate lien right does not fit within the definition of new value, as intended by Congress. As one court noted:

> Congress could have allowed courts to expand upon the doctrine of new value by legislating that new value includes certain transactions. Instead, Congress stated what new value means, which should retard case law expansion. *Id.* Citing *Collier on Bankruptcy,* Para. 101.00(2), 15th Ed.1986.

Moreover, in the case currently before the Court, debtor contends that the lien rights of Milchem had no value because the well and underlying lease were valueless.

■ The instant dispute is similar to the circumstances presented in *In re George Rodman, Inc.,* 39 B.R. 855 (Bankr.W.D. Okla.1984), *rev'd.* 792 F.2d 125 (10th Cir. 1986). In *Rodman,* during the preference period, debtor paid $238,000 to one of its suppliers in exchange for the release of liens *actually filed* against the oil well. It was not disputed that the liens were valid. However, there, as here, the well proved to be a dry hole and was finally plugged as worthless. In reviewing the value requirement, the bankruptcy court wrote:

> ... This definition demands that there be a *quid pro quo* value exchange between the debtor and the transferee.... We construe the definition to essentially mean a transfer which has value in the

economic sense. A transfer which may neither be void or voidable must nevertheless have some actual value or economic worth. A valueless transfer falls outside the definition of "new value".... At 857.

A preference is, after all, a transfer which enables one creditor to receive a greater proportion in the payment of its claim against the estate than it would receive had the transfer never occurred and the creditor had participated in distribution of the estate's assets. *Id.* at 857–58.

Milchem argues that its lien rights had value as of the date of the transfer because if it had not received the payment and had subsequently perfected its lien, it is likely the full amount of the lien would have been paid by the owners * * * of the leasehold.[1] Assuming this were true does not enhance Milchem's argument. As the *Rodman* court correctly noted, the inquiry is whether the estate received something with economic value and not whether these inchoate lien rights had economic value to Milchem. Inasmuch as the well against which Milchem's lien would have attached had been plugged and abandoned as worthless, any lien on this well from the estate's perspective could not be considered new value. Accordingly, the above-described payments are not excepted under § 547(c)(1).

This Court is aware of the opinion of the Tenth Circuit Court of Appeals, *In re Rodman,* 792 F.2d 125 (10th Cir.1986) reversing the bankruptcy court opinion upon which this Court relies. The Court of Appeals ruled that there was no valuation

---

**1.** Benny Frank Clark, credit collection manager for Milchem, testified that Milchem's records showed the leasehold to be co-owned by Gulf Oil, Amerada Hess Corporation, Clark Oil and others. He stated that in the normal course of events where owners such as these are involved, if the operator (e.g., Nucorp) didn't pay Milchem, Milchem would call the major oil company owners and tell them that Milchem might lien the lease, relying on the pressure the major oil companies would bring to bear on the operator to get payment. Clark also testified that in most instances Milchem does not file a lien on a dry hole because, "a dry hole is worthless." In essence, Clark admitted that the major value of

Milchem's lien rights on the Martin Praus well was the potential embarrassment liening the leasehold would bring to the major oil company owners rather than any intrinsic value the lien rights on this dry, plugged well would have. Clark testified that the practice within the oil and gas industry was for large companies to promptly pay any liens recorded against their leaseholds and that in his experience, in 98 percent of these cases, the lien is paid in full by the leasehold owner. Milchem argues that it is the release of this "subjective value" of the lien rights to Milchem which constitutes new value sufficient to remove this transaction from a preferential transfer.

requirement contained in the "new value" concept of § 547(a)(2):

> The plain language of the definition does not require the valuation of the property transferred. We have examined §§ 547(c) and 547(a)(2) in the context of Chapter 5 and the Bankruptcy Code as a whole and cannot conclude that a computation of the value of the exchange is mandated. At 128.

The Court of Appeals reasoned that § 548(a)(2)(A) expressly requires the valuation of a transfer; hence, the absence of a similar express provision in § 547 means that there is no valuation requirement. This Court respectfully disagrees with this result.

New value is defined in part as "money or money's worth in goods, services, or new credit, or release of a transfer that is unavoidable by the estate." The language of this section clearly indicates that "new value" may be money or money's worth in goods, or money's worth in services, or *money's worth in the release* of an unavoidable transfer. The concept of worth is one of valuation. Black's Law Dictionary defines worth as "the quality of a thing which gives it value; ... value." At 1782. Worth is defined as "monetary value" in Webster's New Collegiate Dictionary.

It appears that the Court of Appeals focused upon the phrase "release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law" to the exclusion of the express requirement that the release be of property having "money's worth." The following language from *In re Johnson*, 25 B.R. 889, 893–4 (Bankr.E.D.Tenn.1982) expresses this same concept, albeit differently. After discussing why a payment made in discharge of an inchoate mechanic's lien was not a preference, the Court noted:

> [The reason] why such a transfer would not be preferential is the fact that the payments would not enable the creditor to obtain more than the creditor would obtain in a Chapter 7 liquidation ...

since failure to make the payments would simply increase the value of the secured creditor's lien, and the creditor would obtain the value of those payments upon liquidation. (Note, however, that a *different result would pertain where the secured creditor is undersecured; an undersecured creditor who receives payments ... is obtaining more than he would receive in a Chapter 7 liquidation* to the extent that the payments reduced the unsecured deficiency.) [emphasis added] (citing 9A Am. Jur.2d, Bankruptcy § 551 at 153–154 (1980)).

For these reasons this Court declines to follow the reasoning of the Tenth Circuit in *Rodman* and adopts instead the Bankruptcy Court's analysis in that case.

## II.

■ Milchem also argues that the payments may be excepted from the reach of the preference section under § 547(c)(6). This section provides: "[The trustee may not avoid under this section a transfer] (6) that is, the fixing of a statutory lien that is not avoidable under § 545 of this title." In support of its position Milchem cites *Greenblatt v. Utley*, 240 F.2d 243 (9th Cir. 1956), *Cimarron Oil, supra* and *In re White*, 64 B.R. 843 (Bankr.E.D.Tenn.1986). In each of these cases, the courts ruled that a trustee could not avoid payments made on an otherwise perfectible statutory lien. In *Greenblatt*, the Ninth Circuit held that a credit which discharged an inchoate unperfected mechanic's lien on the debtor's property could not be avoided as a preferential transfer. Nothing in the *Greenblatt* case suggests that the lien upon which the payment was made would not have been paid in full if the estate were liquidated. However, having determined that the lien rights Milchem surrendered were valueless, a different result must obtain in this case.

In the ordinary course, payments made on a valid security interest or statutory lien may not be avoided because the creditor does not obtain more than he would in a Chapter 7 liquidation. In the absence of the payments, the creditor's lien would sim-

ply be larger and, upon liquidation, the creditor would receive the larger amount. In this case Milchem received far in excess from the estate than it would have had it participated in liquidation.[2]

Accordingly, judgment will be granted in favor of the estate. Counsel for Fredman is directed to prepare a judgment in accordance with this Memorandum Decision within ten (10) days from the date hereof.

2. The confirmed plan in this case provides for payout to unsecured creditors of approximately 16 cents on the dollar.