**In re Roger QUADE and Brenda Quade, Debtors.**

**Larry S. EIDE, Trustee, Plaintiff,**

v.

**UNITED STATES of America acting Through the FmHA and the U.S. Dept. of Agriculture, Defendant.**

**Bankruptcy No. 86–01549M.
Adv. No. X88–0024M.**

United States Bankruptcy Court,
N.D. Iowa.

May 19, 1989.

Martin McLaughlin, Asst. U.S. Atty., Cedar Rapids, Iowa, for defendant.

H. Raymond Terpstra, Cedar Rapids, Iowa, for debtors.

John L. Duffy, Mason City, Iowa, for First State Bank, Belmond.

Larry S. Eide, Mason City, Iowa, Special Trustee.

## ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

WILLIAM L. EDMONDS, Bankruptcy Judge.

The two matters before the court are the trustee's motion for summary judgment and the Farmers Home Administration's motion for judgment on the pleadings. Hearing was held on these two motions on January 18, 1989 in Mason City, Iowa. Also, a telephone conference was held with

counsel on May 16, 1989 to enable the court to clarify certain facts necessary to the determination of the motions. As a result, it was agreed that certain documents, the Federal Land Bank note and mortgage and the FmHA note and mortgages, would be considered in the court's decision.

The parties agreed that there were no genuine issues as to any material fact. Since the court is considering undisputed facts outside the complaint, it will consider the motion of Farmers Home Administration as a motion for summary judgment. Bankr.R. 7012(b). The court, having considered the statement of material facts not in dispute, the motions, the resistances and briefs filed and the oral arguments of counsel, now issues its ruling which shall constitute findings of fact and conclusions of law pursuant to Bankr.R. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## FINDINGS OF FACT

The trustee, Larry S. Eide, in support of his motion for summary judgment, filed the following statement of material facts not in dispute. At the hearing on his motion, counsel for Farmers Home Administration (FmHA) indicated there was no dispute with these facts.

1. The debtors filed their voluntary petition herein under Chapter 7 on June 30, 1986.

2. Defendant United States of America, acting through the Farmers Home Administration, United States Department of Agriculture (hereinafter FHA) was a creditor of Debtors on the date of the Bankruptcy filing herein and on June 11, 1986 and June 12, 1986.

3. Debtors were indebted to Defendant FHA in the approximate sum of $103,000 on the date of the Bankruptcy filing herein.

4. Debtors executed and delivered to Defendant FHA a Mortgage dated June 11, 1986, encumbering approximately 40 acres of Floyd County farmland. This Mortgage was filed on June 12, 1986 in the office of the Recorder of Floyd County, Iowa and recorded in Book 130 at page 262.

5. The Federal Land Bank of Omaha holds a first mortgage against the real estate in question and an additional adjoining 40 acre tract. The mortgage against the real estate in question and the adjoining 40 acre tract has been foreclosed. The Federal Land Bank of Omaha was due on the date of this Bankruptcy filing secured by the real estate in question and the adjoining 40 acres a sum of $23,507.77, which debt has continued to accrue interest at the rate of 15.5% per annum since the date of filing herein.

6. The debt for which the mortgage in question was given was incurred by the Debtors in 1977.

7. At the time of execution, delivery and recording of the Mortgage to Defendant FHA, Debtors were indebted to numerous other parties for substantial sums of money and said debts exceeded the then fair market value of their assets. The Debtors were insolvent at all of said times.

8. The Trustee currently has in his possession the sum of $4,729.31 which would be available for payment of administrative expenses and for distribution to creditors.

9. The mortgage sought to be avoided was given by Debtors to Defendant FHA in conjunction with the sale by the Debtors of other real estate against which Defendant FHA held a second mortgage. The sales proceeds from the other real estate were insufficient to pay all costs of sale and the debt of The Federal Land Bank of Omaha which was secured by a prior and superior mortgage.

10. No new value in money or monies worth was given to the Debtors by Defendant FHA in exchange for, contemporaneous with or subsequent to the execution, delivery and

recording of the mortgage in question.

11. The statements and allegations of the Trustee set forth in Paragraph 2 of the Motion for Summary Judgment are true and correct.

Paragraph 11 of the statement of material facts references paragraph 2 of the motion for summary judgment which states as follows:

2. The uncontroverted facts show:

(a) Defendant FHA was a creditor of the Debtors at the time of the transfer;

(b) The transfer was made on account of antecedent debts owed before the Debtors to said Defendant before such transfer was made;

(c) The transfer purported secured Defendant FHA to the real estate in question and would entitle said Defendant to receive a greater portion of its claim than it would receive but for the transfer;

(d) The lien, claim or encumbrance of Defendant FHA would, if not set aside, be a second lien against the real estate in question, junior in priority to a mortgage in favor of The Federal Land Bank of Omaha;

(e) The real estate in question, if sold by the Trustee together with other real estate encumbered in favor of The Federal Land Bank of Omaha, would produce sales proceeds sufficient to pay in full all sales costs and all liens and encumbrances superior to that of Defendant FHA, resulting in all remaining net sales proceeds to be received by Defendant FHA as a result of its mortgage sought to be set aside with no other creditors of this Bankruptcy receiving any portion of said sales proceeds;

(f) There would exist insufficient assets in this Estate to pay all secured and unsecured creditors in full;

(g) The transfer to Defendant FHA, if valid, would permit Defendant FHA to receive payment of a portion of its claim without other creditors of this Bankruptcy proceeding receiving any payment toward their claims;

(h) The mortgage to Defendant FHA sought to be avoided was given by Debtors in conjunction with the sale by Debtors of other real estate. All net sales proceeds in excess of costs of sale were received by the first mortgage holder, The Federal Land Bank of Omaha. The Federal Land Bank of Omaha was not paid in full as a result of the sale of this other real estate. The sale of that other real estate was an arms-length transaction and no portion of the sales proceeds were available for distribution to Defendant FHA because of superior liens and encumbrances;

(i) The Debtors were insolvent on the date the mortgage sought to be avoided was given;

(j) No new value was given to the Debtors as a result of the mortgage; and

(k) None of the exceptions to avoidance by the Trustee of Bankruptcy Code § 547(c) apply with respect to this transfer.

However, FmHA has at all times taken the position that in releasing one mortgage and in taking a mortgage on other property (the transaction under attack by the trustee), it had given new value, within the meaning of 11 U.S.C. §§ 547(c)(1)(A) and (B). This position is entirely at odds with trustee's assertions in paragraph 10 of the statement of undisputed facts and in paragraphs 2(j) and 2(k) of the trustee's motion for summary judgment. On May 16, 1989, the parties agreed that the issue of whether new value had been given by the FmHA was in dispute, although the evidentiary facts underlying that issue were not.[1]

Prior to the release by FmHA of a portion of the real property mortgaged to it by Quades and prior to its taking of the mortgage now under attack, the relative positions of FLB and FmHA were as follows.

On May 21, 1982, the debtors executed a variable interest rate note to the Federal

---

1. "A determination of what constitutes 'new value' is a question of fact." *Creditors' Committee v. Spada (In re Spada),* 91 B.R. 668, 671 (Bankr. M.D.Pa.1988).

Land Bank of Omaha in the original principal sum of $190,000.00. This promissory note was secured by a real estate mortgage dated May 21, 1982 and recorded in the real estate records of Floyd County, Iowa on May 28, 1982. This mortgage covered the Southeast Quarter of the Southeast Quarter of Section 25, Township 95 North, Range 17 West of the P.M. in Floyd County and also the South Half of the North Half of the Southeast Quarter of Section 25 in the same township, range and county. The mortgage also included the southwest quarter of section 26 also in Floyd County, but prior to the events under consideration, FLB released from its mortgage certain property in that quarter section so that by early spring, 1986, FLB held a mortgage only upon approximately 80 or so acres in the southwest quarter of section 26.

Therefore, at the time of the transaction being challenged by the trustee, FLB had a first mortgage on 160 acres owned by the debtor. The foregoing information as to the FLB position is apparent from FLB's proof of claim filed in this case which this court°will consider as evidence pursuant to the agreement of the parties arising out of the telephone conference on May 16, 1989.

FmHA had a junior lien on 120 of the 160 acres mortgaged to FLB. This lien arose out of a mortgage granted by debtors to FmHA which was recorded in Floyd County on April 8, 1977 and which described the Southwest Quarter of Section 26 in Floyd County and the Southeast Quarter of the Southeast Quarter of Section 25. The mortgage indicated it was junior to the lien of FLB. FmHA later apparently also released from its mortgage the same portion of section 26 as had FLB.

Sometime prior to June 11, 1986, FLB or debtors desired to sell and perhaps had already obtained a buyer for 80 of the 160 acres mortgaged to FLB. These 80 acres were located in the Southwest Quarter of Section 26.

The 80 acres could not be sold and the proceeds paid to FLB without in some way resolving the junior lien of FmHA. It was apparently agreed that FmHA would voluntarily release its lien on the 80–acre parcel, and FmHA would obtain a mortgage on 40 of the debtors' 160 acres upon which FLB already had a mortgage. These 40 acres were located in the South Half of the North Half of the Southeast Quarter of Section 25.

FmHA, therefore, released its lien on the 80 acres and obtained a mortgage from debtors on the 40 acres in question. This mortgage was dated June 11, 1986 and was recorded on June 12, 1986.

There is no evidence before the court as to the date on which FmHA released its mortgage on the 80 acres. There is further no evidence before the court on the intent of the debtors in granting the new mortgage, although there is uncontradicted evidence that it was the intent of FmHA to take the new security as a replacement for the old.

Finally, there is no evidence before the court as to the values of the various parcels at the time of the transaction. However, the parties agreed during the May 16, 1989 conference that at the time of the transaction, debtors' indebtedness to FLB exceeded the value of 160 acres mortgaged to it but did not exceed the value of all 160 acres. Further, the value of FLB and FmHA debts exceeded the total value of all of the real estate.

## DISCUSSION

### I.

Trustee argues that all of the elements of a preference are present. He states that at the time the new mortgage was taken, FmHA did release a mortgage on another parcel of ground. However, trustee argues that the released mortgage had no value, the real estate having been fully encumbered by a prior mortgage to Federal Land Bank. Therefore, trustee contends FmHA gave no new value in exchange for the new mortgage and at the time of the transfer, FmHA was basically unsecured.

FmHA argues that the release of its mortgage, regardless of its value, constitutes new value under 11 U.S.C. § 547(c). Therefore, FmHA argues, its mortgage on the 40 acres should not be set aside.

FmHA also argues that prior to the transfer, it could have forced a marshaling of assets requiring Federal Land Bank to proceed first against the real estate encumbered only by FLB and thereby creating equity for its mortgage on the 80 acres. Instead, FmHA agreed to release its mortgage on the 80 acres and take a new mortgage on the 40 acres. FmHA takes the position that under a marshaling theory and considering all parcels, its second mortgage on the 80 acres could not be considered to have no value. FmHA therefore defends the motion for summary judgment and seeks judgment on the pleadings on the basis of 11 U.S.C. § 547(c)(1)(A) and (B).

## II.

"The trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of creditor:

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

11 U.S.C. § 547(b).

The parties do not dispute that the debtors' transfer of a mortgage to FmHA meets all the elements of a preferential transfer set forth in 11 U.S.C. § 547(b). However, FmHA argues that because new value was given for the debtors' transfer of a mortgage on the 40 acres, the trustee may not avoid this transfer.

■ The trustee may not avoid a transfer under 11 U.S.C. § 547 if the transfer was a contemporaneous exchange for new value. 11 U.S.C. § 547(c)(1). New value is defined as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of· such property, but does not include an obligation substituted for an existing obligation." 11 U.S.C. § 547(a)(2).

The definition of new value specifically states that new value does not include an obligation substituted for an existing obligation. However, the court stated in *Lancaster v. First National Bank of Greeneville, Tennessee (In re Cloyd)*, 23 B.R. 51 (Bankr.E.D.Tenn.1982):

> [t]he mere substitution of new security in the place of security for an old debt does not ordinarily create a preference because there is no diminution of the debtor's estate whereby the creditors may be injured. (Citation omitted.) It is a different matter, however,· when the transaction actually results in a depletion of the debtor's assets. In such a case, where the new security `is of greater value than the old, a voidable preference for the difference in value between the two securities may result.

*Lancaster v. First National Bank of Greeneville, Tennessee (In re Cloyd)*, 23 B.R. 51, 54 (Bankr.E.D.Tenn.1982). *See also Danning v. World Airways, Inc. (In re Holiday Airlines Corporation)*, 647 F.2d 977, 982 (9th Cir.1981).

■ The transaction under attack by trustee Eide is one which amounted to a substitution in collateral. A substitution in collateral, if it meets the requirements of 11 U.S.C. § 547(c)(1)(A) and (B), is a defense to a preference action.

However, there is disagreement over whether the collateral exchange must be equivalent or substantially equivalent in value. One view is that the values exchanged must be approximate or said an-

other way, there must be a *quid pro quo* value exchange. *In re Finelli Jewelry Co., Inc.*, 79 B.R. 521, 522 (Bankr.D.R.I. 1987); *Fredman v. Milchem, Inc. (Nucorp Energy, Inc.)*, 80 B.R. 517, 519 (Bankr.S.D. Cal.1987).

An opposite view is taken by the Tenth Circuit Court of Appeals. In *Kenan v. Fort Worth Pipe Company (In re George Rodman, Inc.)*, 792 F.2d 125 (10th Cir. 1986), the court held that the plain language of § 547(c) of the Code did not require valuation of the property transferred. There the court held that a creditor's release of a lien on an oil well which ultimately proved dry, was satisfactory "new value" in exchange for the debtor's payment of the creditor's debt under § 547(c)(1).

■ It is FmHA that has the burden of proof on the issue of whether its release of its mortgage in consideration for obtaining another was "new value" within the meaning of 11 U.S.C. § 547(c)(1).

■ In order to prevail on this defense, FmHA must prove:

(1) that there was an intent by the debtors and the FmHA to have a contemporaneous exchange for new value and

(2) there in fact was a substantially contemporaneous exchange.

In determining whether "new value" was given by FmHA to debtors, this court might also consider whether the transaction in question resulted in a depletion to the estate to the detriment of other creditors. *Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc. (In re Fuel Oil Supply & Terminaling, Inc.)*, 837 F.2d 224, 228 (5th Cir.1988); *Waldschmidt v. Mid–State Homes, Inc. (In re Pitman)*, 843 F.2d 235, 241 (6th Cir.1988).

■ The court believes that the FmHA release of the mortgage on the 80 acres was "new value" under 11 U.S.C. § 547(c)(1)(A) and (B). The court also finds that the exchange was one of substantially equivalent values. Therefore, the court need not determine whether 11 U.S.C. § 547(c)(1) requires that the collateral exchange must be equivalent in value.

The court comes to this finding and conclusion for the following reasons.

The trustee takes the position that because of the prior lien of FLB on the 120 acres also mortgaged to FmHA, the lien of FmHA on the 80 acres had no value. FmHA, of course, argues that it did have value because equity would have been created by FmHA's effort to require FLB to marshal assets in any foreclosure.

After much consideration, this court has decided it need not reach the marshaling issue.

In order to determine whether "new value" was given, this court must focus on the release of mortgage and the granting of a new mortgage—not on the sale by FLB or debtors of the 80 acres. That sale essentially resulted in the same type of marshaling which FmHA argues it could have required.

Before the substitution, FmHA was the junior lienholder on 120 acres upon which if FLB foreclosed, there would be no equity for FmHA. FLB also had a lien on an additional 40 acres. After the transaction, FmHA held a junior lien on 80 acres subject to the FLB mortgage, and FLB also held a mortgage on an additional 80 acres. In analyzing the position of FmHA both before and after the transaction in question, FmHA did not better its position and in fact, arguably, it was in a worse position. After the substitution, if FLB had chosen to foreclose its senior mortgage on the 80 acres on which FmHA held a junior lien, there would have been no equity for FmHA.

If marshaling is ignored, as trustee argues it should be, FmHA arguably exchanged a "valueless" lien for a valueless lien.

The court finds and concludes that the release of the FmHA mortgage on 80 acres and the debtors' granting of a new mortgage on the 40 acres did not deplete the estate. It merely changed the position of the creditors on the same real estate. There is no argument by trustee that the sale of the 80 acres and the application of

proceeds to FLB was in itself a preferential transaction.

While the court concludes that the FmHA gave new value in return for the 1986 mortgage, the court concludes there is insufficient evidence before the court as to whether the granting of the new mortgage and the release of the old was a "substantially contemporaneous exchange," or whether it was intended by the debtors as such. 11 U.S.C. § 547(c)(1)(B). Because of these unresolved facts, this court believes it inappropriate to grant either motion.

### ORDER

IT IS THEREFORE ORDERED that the trustee's motion for summary judgment is denied. The motion for judgment on the pleadings filed by FmHA is denied. The clerk shall set this matter for final trial allowing one to two hours. Trial shall be set after July 1, 1989. Scheduling conferences will not be required.

SO ORDERED.