**In re M & L BUSINESS MACHINE COMPANY, INC., Debtor.**

**Christine J. JOBIN, Trustee for the Estate of M & L Business Machine Co., Inc., Plaintiff/Appellee,**

**v.**

**Verna B. MATTHEWS and L.D. Arnot, a/k/a L. Arnot, a/k/a Lee Arnot, Robert C. Arnot, and the Esther Philleo Arnot Trust, L.D. Arnot, Trustee, Defendants/Appellants.**

Civ. A. No. 94–K–1875.
Bankruptcy No. 90–15491 CEM.
Adv. Nos. 92–2570 RJB, 92–2725 RJB.

United States District Court,
D. Colorado.

July 17, 1995.

Christine J. Jobin, The Jobin Law Firm, Denver, CO, for plaintiff/appellee.

Harmon S. Graves, Tilly & Graves, Denver, CO, for defendants/appellants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The issue presented in this appeal is whether the bankruptcy court erred in ruling that 11 U.S.C. § 547(b) is constitutional in its application to transfers made to Defendants within ninety days before bankruptcy by M & L Business Machine Co., Inc. ("M & L"), a debtor engaged in a Ponzi scheme,[1] and the separate classification of transferees subject to § 547(b) bears a rational relationship to the purposes of the statute.

### I. *Procedural Background.*

These two consolidated cases are among several hundred adversary proceedings filed by the M & L bankruptcy trustee ("Trustee"). On December 5, 1992, the Trustee filed a complaint against Verna B. Matthews seeking to avoid transfers under 11 U.S.C. §§ 544, 547 and 548 totalling $2,342,934 plus interest and costs. On December 18, 1992, the Trustee filed a complaint seeking recovery under the same code sections of $1,383,-952.98 against L.D. Arnot and the Esther Philleo Arnot Trust, L.D. Arnot, Trustee,

and of $122,590 against Robert C. Arnot plus interest and costs.

In both cases, Defendants, now Appellants, filed their answers to the complaints, asserting as an affirmative defense that 11 U.S.C. § 547(b) and its application to an alleged Ponzi scheme is unreasonable, arbitrary, capricious, discriminatory, and unconstitutionally denies their rights of substantive due process and of equal protection of the laws encompassed by the due process clause of the Fifth Amendment to the United States Constitution.[2]

Concurrently with the filing of their answers, Appellants filed their Notification of Claim of Unconstitutionality pursuant to Local Rule of Bankruptcy Procedure 20 to cause the bankruptcy court to certify the constitutional issue to the United States Attorney General in accordance with 28 U.S.C. § 2403(a). The bankruptcy court issued its order in each case certifying that the constitutionality of 11 U.S.C. § 547(b), a statute affecting the public interest, had been challenged by Appellants and authorized the United States to intervene to present evidence and argument on the question of constitutionality. The United States has not elected to intervene.

On March 16, 1994, the Trustee filed a motion for summary judgment on her claims under 11 U.S.C. §§ 547 and 548 in each case. The bankruptcy court heard oral argument in the *Arnot* case on August 2, 1994 and denied the motion at the conclusion thereof. As the issues were identical to those in *Arnot,* the bankruptcy court vacated the hearing in *Matthews* scheduled for August 3, 1994 and denied the trustee's motion for summary judgment for the same reasons as in *Arnot.*

In his August 2, 1994 ruling, the bankruptcy judge specifically found 11 U.S.C. § 547 fulfills the legitimate purposes of Congress to

---

**1.** "A 'Ponzi' scheme, as that term is generally used, refers to an investment scheme in which returns to investors are not financed through the success of the underlying business venture, but are taken from principal sums of newly attracted investments. Typically, investors are promised large returns for their investments. Initial investors are actually paid the promised returns, which attract additional investors." *Sender v.*

*Heggland Family Trust (In re Hedged–Investments Associates, Inc.),* 48 F.3d 470, 471 n. 2 (10th Cir.1995).

**2.** Although Defendants asserted the same defense in relation to 11 U.S.C. §§ 548(a)(1) and (2) as applied to a Ponzi scheme, they do not raise an issue with respect to those statutory sections in this appeal.

discourage a race to the debtor's assets and a dismantling of the debtor and to equalize distribution to creditors of the same class; the statute bears a rational relationship to the purpose for which it was written; and 11 U.S.C. § 547(b) is not unconstitutional.

On August 5, 1994, Appellants in each case filed a motion for leave to appeal an interlocutory order and notice of appeal identifying the appealable issue as the constitutionality of 11 U.S.C. § 547(b) in its application to a Ponzi scheme. The Trustee filed an objection to the motion alleging Appellants had failed to meet asserted threshold requirements to maintain an interlocutory appeal. On August 12, 1994, I granted Appellants' motion for leave to appeal interlocutory orders and consolidated the appeals. On August 18, 1994, I overruled the Trustee's objection to the motion.

## II. *Factual Background.*

M & L Business Machines Company, Inc. ("M & L") had operated as a computer sales leasing firm from its inception in the 1970's. On October 1, 1990, it filed for Chapter 7 bankruptcy protection. Soon thereafter, it converted the case into a Chapter 11 reorganization. On December 18, 1990, Christine Jobin was appointed Chapter 11 trustee ("Trustee"). In February 1991, she discovered much of M & L's boxed inventory contained bricks and dirt and suspected that M & L's principals had used the corporation as a front for a Ponzi and/or check kiting scheme.

There were approximately 1600 investors, amongst them, Appellants, in M & L during the period of time the Ponzi scheme was in operation. According to the Trustee during the year pre-petition, approximately $290 million passed through the M & L and related accounts, of which approximately $80 million was attributable to investors. When the scheme collapsed, approximately $83 million in post-dated checks remained in the hands of investors.

On September 26, 1991, the Trustee converted the case into Chapter 7 liquidation and has since commenced over 400 adversary proceedings, including those against Appellants, to avoid transfers and recover property of the estate.

Appellants make specific assertions regarding their particular transactions with M & L. The Trustee makes specific allegations as to the amount of money invested within the ninety day prepetition period by investors who received nothing in return. I do not detail these assertions, since the issue of whether § 547(b) is unconstitutional in its application to a Ponzi scheme is independent of whether particular investors made an overall profit or loss.

## III. *Standard of Appellate Review.*

■ To the extent the bankruptcy court's order regarding the unconstitutionality of 11 U.S.C. § 547(b) involved a legal determination, it is subject to de novo review; to the extent it involved questions of fact, I review the findings for clear error. *See Phillips v. White (In re White),* 25 F.3d 931, 933 (10th Cir.1994).

## IV. *Merits.*

"In general, a 'preference' exists when a debtor makes payments or other transfers to a certain creditor or creditors, and not to others." *Kenan v. Fort Worth Pipe Co. (In re George Rodman, Inc.),* 792 F.2d 125, 127 (10th Cir.1986) (citing 4 *Collier on Bankruptcy,* ¶ 547.01 (15th ed. 1985)). "Such favoritism is prohibited by 11 U.S.C. § 547(b) when a debtor is in bankruptcy." *Id.* That section provides in pertinent part:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition. . . .

11 U.S.C. § 547(b).

■ Appellants argue the Fifth Amendment of the United States Constitution mandates persons who are similarly situated receive like treatment under the law and a statute may single out a class for distinctive

treatment only if that classification bears a rational relationship to the purpose of the statute. They assert all investors in a Ponzi scheme are predominantly creditors of the same class and should be treated equally. Accordingly, they maintain the separate classification of transferees subject to § 547(b) bears no rational relationship to the purpose of the statute and amounts to discrimination so unjustifiable as to be violative of due process. Appellants cite numerous non-bankruptcy cases in support of their contention that the singling out of preferential transferees in a Ponzi scheme bears no rational relationship to the purposes of the statute. These cases are unhelpful.

Appellants also rely on the comments in *In re Independent Clearing House Co.*, 77 B.R. 843, 871 (D.Utah 1987) where the court raised the issue of whether § 547 should apply to investors in a Ponzi scheme. Chief Judge Jenkins stated:

> All investors in a Ponzi scheme are creditors of the same class, so in theory all should be treated equally. . . .
>
> The equitable solution would be either to apply the statute to all transfers to investors in a Ponzi scheme—without regard to when the transfers were made—or to apply the statute to none of the transfers. Yet this court is no more free to rewrite the statute to bring the early undertakers into its net than it is to ignore the statute to treat later undertakers equally. Courts must apply the statute as written. The only question in these appeals is whether the bankruptcy court correctly applied the statute.

*Id.* Appellants urge application of the constitutional principle of equal protection of the laws and declare § 547(b) unconstitutional in its inequitable application to a Ponzi scheme.

The Trustee argues Appellants' request is not supported by the Court's pronouncements in *Cunningham v. Brown* that a "defrauded lender becomes merely a creditor to the extent of his loss and a payment to him by the bankrupt within the prescribed period of four months is a preference." 265 U.S. 1, 12, 44 S.Ct. 424, 426, 68 L.Ed. 873 (1924). She further asserts the application of § 547(b) in the context of a Ponzi scheme

serves the legislative intent of the preference section.

Section 547, enacted by the Bankruptcy Reform Act of 178, superseded Section 60a and b of the former Bankruptcy Act of 1898. Appellants and the Trustee agree § 547 is intended to serve two basic policies described in the House Committee Report:

> The purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the court house to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter "the race of diligence" of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution.

H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 177–178 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6137–38.

The parties agree the standard to be applied in reviewing the constitutionality of a classification under bankruptcy legislation is whether it bears a rational relationship to the Congressional goals in enacting it. *See United States v. Kras*, 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973) ("bankruptcy legislation is in the area of economics and social welfare. This being so, the applicable standard in measuring the propriety of the Congress' classification, is that of rational justification." (Citations omitted.)) Thus, the issue for determination is whether there is rational justification for the ninety day reach back provision in light of the intent of Congress in enacting § 547(b). I find there is.

When § 60 of the Bankruptcy Act was amended, the purpose of the amendment was to remove several impediments to the functioning of the two stated policies of the section. *See* H.R.Rep. No. 95–595, *supra.* Before the amendment, the preference section required the trustee to prove the debtor's insolvency at the time the preferential transfer was made. This proved a difficult task given the financial condition of nearly all debtors in the three months before bankruptcy, thus defeating the policies of equality and of deterring creditors from the race of diligence. *Id.*

Second, before the amendment, the trustee had to show the creditor for whose benefit the preferential transfer was made had "reasonable cause to believe the debtor was insolvent at the time of the transfer." *Id.* As stated in the House Committee Report, "[t]his provision was designed when the primary purpose of the preference section was to prevent the race of diligence." *Id.* Focusing on the creditor's state of mind ignored "the strong bankruptcy policy of equality among creditors" and defeated the policy "by limiting recoveries only to the most egregious cases." *Id.*

To remedy these defects, Congress enacted § 547(b), eliminating the reasonable cause to believe requirement for transfers made during the ninety day period preceding bankruptcy and creating a presumption of insolvency in that period. *Id.*

Appellants focus on the first declared purpose of the section, namely, to discourage creditors "from racing to the courthouse to dismember the debtor during his slide into bankruptcy. . . . [which] often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors." H.R.Rep. No. 95–595 *supra.* They argue this purpose has no rational application in the context of a Ponzi scheme since Congress could not have intended to protect such a debtor so as to enable it to perpetuate fraudulent activities.

While Congress certainly would not have intended to perpetuate an illegitimate scheme, its intention to avoid a debtor's dismemberment may rationally apply even to a Ponzi scheme when one considers that creditors of such a debtor may include non-investors. For example, if a Ponzi scheme uses telephone services and its telephone company remains unpaid, preventing investor creditors from rushing to dismantle the debtor as it slides into bankruptcy would serve to protect the interests of such non-investor. *See Sender v. Heggland Family Trust (In re Hedged–Investments Associates, Inc.),* 48 F.3d 470, 476 (10th Cir.1995).

Appellants' focus on the first prong of the two-fold policy and their criticism of the Trustee for concentrating on the second is misplaced. The legislative history of § 547(b) describes this second purpose, to facilitate equality of distribution among the creditors of the debtor, as "the more important" and "the prime bankruptcy policy." H.R.Rep. No. 95–595 *supra.*

This primary purpose is served by the application of the section to creditors of a Ponzi debtor. While Appellants' position may be perceived as unfortunate in terms of their net losses through involvement with the Ponzi scheme, "[t]he avoidance of every preference will to some extent defeat the intent of the parties because the transferor was willing to make a transfer and the transferee was presumably willing to accept it." *Morrison v. Champion Credit Corp. (In re Barefoot),* 952 F.2d 795, 801 (4th Cir.1991).

Congress' clear intent was to regard as preferential transfers, subject to certain stated exceptions, all transfers made within the ninety days of the filing of the petition. In arguing that investors in a Ponzi scheme who are paid within the reachback period should be given special exemption from § 547(b), because other investors were paid before that period, Appellants attempt to introduce considerations of reasonableness of recovery under § 547(b). However, "[m]aking dispositive the factors of reasonableness and intent impedes the primary bankruptcy policy of equality of distribution among creditors by sanctioning the very preferences that Congress sought to disallow, see H.R.Rep. No. 595, *supra,* at 178, *reprinted in* 1978 U.S.C.C.A.N. at 6139, and such factors are not germane under § 547(b)." *Morrison,* 952 F.2d at 801.

To eliminate the application of § 547(b) to a Ponzi scheme debtor would be to ignore the fact that not all creditors of such scheme are private investors. As I noted in *Jobin v. McKay (In re M & L Business Machine Co.),* "not all of M & L's creditors are private investors." 164 B.R. 657, 663 (D.Colo.1994).

Other courts have recognized the importance of acknowledging noninvestor creditors in bankruptcy proceedings involving a Ponzi scheme. In *In re Hedged–Investments Associates, Inc.,* 48 F.3d at 476, the Tenth Circuit considered the applicability to a Ponzi scheme of the ordinary course of business defense in § 547(c)(2), created as an exception to the general avoidance provision of § 547(b). The court found no support for "the sweeping rule that § 547(c)(2) has no application in the context of a Ponzi scheme." *Id.* While it found the literal terms of that section preclude the application of the ordinary course of business defense to transfers to investors in the course of a Ponzi scheme, "the purposes of § 547(c)(2) clearly are served by permitting its application to non-investor-creditors whose transfers are received in the ordinary course of business." *Id.*

Eliminating the application of § 547(b) to transfers under a Ponzi scheme would also ignore those investors who transfer monies to the scheme within the ninety day prepetition period who receive nothing in return due to the collapse of the scheme, yet whose funds are used to pay earlier investors.

On balance, "it cannot be maintained that there exist substantive rights protected under the due process clause, which outweigh the Congressional prerogative to regulate bankruptcies" as expressed in § 547(b). *Pillow v. Avco Financial Services (In re Pillow),* 8 B.R. 404, 424 (Bankr.D.Utah 1981). The Constitution, at most, requires a rational connection between § 547(b) as applied to a Ponzi scheme and the purpose for which the section was enacted. Such connection exists in that the avoiding preferences in a Ponzi scheme serves the primary purpose to equalize distribution to creditors and, to a lesser extent, to discourage a race to the debtor's assets and a dismantling of the debtor. Ac-

cordingly, the test for constitutionality is satisfied.

### V. *Conclusion.*

For the aforesaid reasons, I deny the interlocutory appeal.

ORDERED that the August 2, 1994 ruling of the bankruptcy court is AFFIRMED.