In re T. I. SWARTZ CLOTHIERS, INC., Debtor.

T. I. SWARTZ CLOTHIERS, INC., Cross-Plaintiff,

v.

UNION TRUST COMPANY OF MARYLAND, Cross-Defendant.

Bankruptcy No. 80–00323.
A. P. No. 80–0086.

United States Bankruptcy Court,
E. D. Virginia,
Alexandria Division.

Dec. 1, 1981.

Thomas J. Stanton, Alexandria, Va., for debtor.

Gregory U. Evans, Arlington, Va., for Union Trust Co. of Md.

Stanley J. Samorajczyk, Fairfax, Va., trustee in Bankruptcy.

Wendy Manz, Arlington, Va., for trustee.

MEMORANDUM OPINION

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

This matter comes before the Court upon cross filings in the proceeding *Delcor Mortgage Corporation v. T. I. Swartz Clothiers, Inc.* and *Union Trust Company of Maryland.* The trustee has filed a Motion for Summary Judgment on behalf of T. I. Swartz Clothiers, Inc. ("TISC") to avoid a lien held by Union Trust Company of Maryland ("the Bank") against certain of TISC's property.

The issue before the Court is whether that portion ($63,736.20) of a $105,000.00 secured loan of the Bank to TISC that was applied by the Bank to TISC's overdrawn account represented payment of an already existing obligation or a contemporaneous exchange for new value.

The relevant facts, as stipulated by the parties, are as follows:

1. TISC opened a payroll checking account ("the Account") with the Bank in the latter part of 1979.

2. On January 29, 1980, a series of payroll checks drawn on the Account were presented to the Bank for payment. The existing balance in the Account was insufficient to cover payment of the checks presented. The Bank called TISC and advised it of the situation. TISC requested that the Bank honor the checks, promising immediately to make a deposit to the Account sufficient to cover the same. Based upon this promise, the Bank honored rather than returned the checks, resulting in an overdraft in the Account of $13,110.78. On January 31, 1980, TISC made a deposit of $21,702.74 to the Account, leaving a positive balance therein.

3. On February 4, 1980, the Bank learned that the check in the amount of $21,702.74 which TISC had deposited on January 31, 1980 was being returned. Additionally, a series of payroll checks drawn on the Account were presented to the Bank for payment. With the return of the check which had been deposited to the Account, there were again insufficient funds therein to cover the payment of the checks drawn thereon which had been presented to the Bank. Based upon further assurances of impending deposits by TISC, the Bank in fact honored rather than returned the checks, resulting in an overdraft in the Account of $44,971.09. The following day, TISC deposited a check in the amount of $56,008.76 to the Account, leaving a positive balance therein.

4. On February 12, 1980, the Bank learned that the $56,008.76 check deposited by TISC on February 5, 1980 was being returned. The Bank then advised TISC that any checks subsequently presented for payment on the Account would have to be returned. On February 13th and 14th representatives of TISC, the Bank and Delcor Mortgage Corporation (TISC's principal financier) met with respect to the possibility of a loan by the Bank to TISC. Checks drawn on the Account and presented to the Bank for payment on those dates were not honored.

5. On February 15, 1980, the Bank made a loan to TISC in the amount of $105,000.00. At the time of the loan, the Account was overdrawn in the amount of $63,736.20. The loan from the Bank to TISC was to be secured by TISC's equipment, inventory and accounts receivable, with TISC to bear the legal fees incurred by the Bank and the cost of recording the financing statement relative to the security pledged to the Bank for the loan. The Bank disbursed the loan as follows:

(A) $1,792.00 to Weinberg and Green in payment of the legal fees and recording costs in connection with the loan.

(B) $103,208.00 deposited to the Account, eliminating the $63,736.20 overdraft and leaving a positive balance.

I

The trustee contends that the application of a portion of the loan to cure TISC's existing overdraft of $63,736.20[1] was a

---

1. The trustee does not challenge the entire $105,000.00. He concedes that the excess over that applied to the overdrawn account was for new value and properly secured by TISC's collateral. Therefore, payments made by TISC on that balance are not in question here.

voidable preference under Section 547(b) of the Bankruptcy Code. 11 U.S.C. § 547(b). This section permits a trustee to avoid any transfer of property of the debtor made to or for the benefit of a creditor on account of any antecedent debt if the transfer occurred within ninety days prior to the filing of the petition in bankruptcy. The Bank does not dispute the trustee's assertions that the payment would be voidable under Section 547(b). Rather, the Bank seeks to invoke the statutory exception of Section 547(c) to the trustee's preference-avoiding powers. 11 U.S.C. § 547(c). Section 547(c)(1) provides:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

11 U.S.C. § 547(c)(1). The trustee contends that the transaction in question was not a contemporaneous exchange and does not qualify for the statutory exception to the trustee's avoiding power because the Bank paid TISC's overdrawn checks for two weeks, in effect making an unsecured loan, which debt was repaid from proceeds of the later, secured loan. The trustee argues that the parties did not intend to make a contemporaneous exchange, as evidenced by their actions. The trustee supports his assertion by reference to documents in evidence, discussed *infra.*

The trustee cites *National City Bank v. Hotchkiss,* 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913). In that case, a bank made an unsecured "clearance loan" to a brokerage firm in the morning, later found out that the firm was in financial trouble and then, that afternoon, sought and received security for the morning loan. The Supreme Court held this to be a preference since the

parties never intended the security transfer and the loan to be contemporaneous. *Id.* at 58, 34 S.Ct. at 21–22.

The Bank, on the other hand, contends that this case falls within the precedent set by *Dean v. Davis,* 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917). There, a secured loan was intended but the mortgage securing the loan was not recorded until one week later. The Supreme Court held there was no preference since there was no pre-existing debt, and the "mortgage was provided to secure a substantially contemporaneous advance." *Id.* at 443, 37 S.Ct. at 131.

## II

■ Section 547(c) of the Bankruptcy Code codifies the rules in *Hotchkiss* and *Dean, supra,* and therefore "whether the parties *at the outset* intended the exchange to be contemporaneous is determinative." 4 *Collier on Bankruptcy,* ¶ 547.37, p. 547–118 (15th ed. 1980). (Emphasis added.) The intent with which the loan was sought and made, in turn, is a question of fact in each case. *See Dean v. Davis, supra,* at 444, 37 S.Ct. at 131–32. Since summary judgment requires an absence of factual issues, there must be no real question over the intent of TISC and the Bank if the trustee's motion is to be granted.

■ In determining whether the trustee's motion for summary judgment should be granted, the Court must consider the following principles of law. Under Rule 56(c), Federal Rules of Civil Procedure, as adopted by Rule 756, Rules of Bankruptcy Procedure, summary judgment properly may be entered only when there is no genuine issue as to any material fact and the movants are entitled to judgment as a matter of law. *Phoenix Savings and Loan, Inc. v. The Aetna Casualty and Surety Company,* 381 F.2d 245, 249 (4th Cir. 1967). Even when the evidentiary facts are undisputed, summary judgment should not be granted if conflicting inferences may be drawn from those facts. *Id.*

The Court notes that the Fourth Circuit, in a line of cases, has strictly interpreted the law governing the use of summary judgment. *E. g., Stevens v. Howard D. Johnson Company*, 181 F.2d 390 (4th Cir. 1950). In fact, the Fourth Circuit has demonstrated a reluctance to affirm decisions based upon summary judgment. *Green v. Wells*, 329 F.Supp. 559, 561 (D.Md.1971).

The burden is on the party moving for summary judgment to produce evidence which negates the opposing party's claim. *Sheridan v. Garrison*, 415 F.2d 699 (5th Cir. 1969). In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the opposing party and give to that party the benefit of reasonable inferences to be drawn from the underlying facts. *Adickes v. S. H. Kress and Company*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). Any doubts by the court concerning the existence of a disputed material fact must be resolved against the movant. *Phoenix Savings and Loan, Inc., supra*, 381 F.2d at 249.

The burden on the nonmoving party is not a heavy one. He need only demonstrate the existence of specific facts, as opposed to general allegations, that present to the court a genuine issue of material fact. Thus, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968).

The Court has an obligation to search the entire record of the matter before it determines whether to grant summary judgment. This requires that judgment for the movant should be granted only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.Proc. 56(c). The Fourth Circuit has explicitly stated that "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances" summary judgment should not be granted. *Phoenix Savings and Loan, Inc., supra*, 381 F.2d at 249.

The Court has examined the briefs and other documents submitted by the parties in the instant case. This record discloses each party's interpretation of the transaction in question.

The trustee points to statements in documents of record which tend to prove lack of intent for a contemporaneous exchange. First, is a letter dated February 15, 1980 from Thomas G. Weyforth, president of TISC, to Louis C. Minder, vice-president of the Bank. The letter states, in pertinent part:

> This Note is, in part, to evidence the undersigned's obligation to repay certain overdrafts on checking account no. 203–087–48 outstanding from time to time prior to the date hereof.

Deposition Exhibit 5. This letter indicates that the proceeds of the loan were to be applied to a pre-existing obligation and that TISC at least did not intend a contemporaneous exchange.

Second, the trustee notes that the Bank's vice-president stated at deposition that three days before granting the loan the Bank planned to "just call the overdraft and have our attorneys close up the business." (Deposition of Louis C. Minder, March 4, 1981, at 15, 17.) On the same day, February 12, 1980, the Bank ceased to honor checks drawn on TISC's account.

Third, the trustee refers to a background memo prepared by the Bank in May 1980. In discussing the circumstances of the loan, the memo states:

> On 2/15/80, a meeting was held between the bank, Swartz [TISC], and another creditor (Delcor Mortgage Corp.) in order to see whether UTC [the Bank] would advance additional sums until after the Feb. sale.

At that meeting, Martin W. White, Jr., V.P., represented the Bank and he ap-

proved a [$105,000.00] secured loan which would cover the overdraft and extend additional funds to meet the company's payroll.

Deposition Exhibit 8.

The Bank, in seeking to adduce concrete evidence to support a showing of intent to make a contemporaneous exchange, relies basically upon the Bank's efforts to get TISC to cover the overdrafts during the two weeks before the loan was made and on the representation of the Bank's vice-president that the Bank never intended to make any unsecured loans to TISC.

An affidavit of the Bank's vice-president includes the following statements concerning the overdrafts and the loan: "Except for the loan on 2/15/80, UT [the Bank] never intended to make any loans to TIS [TISC], except upon the giving of sufficient security therefor." (Affidavit of Louis C. Minder, January 18, 1981, Deposition Exhibit 7.) Thus, the Bank characterizes its actions in dealing with TISC as evidencing intent to require TISC to maintain a positive balance in its payroll account so that application of the loan proceeds to the account represented a substantially contemporaneous exchange.

Keeping in mind the crucial role of intent in any determination of whether the actions of the parties bring this transaction within the Section 547(c) exception to the trustee's avoiding power, the Court is not convinced of the absence of factual issues here. A person's intent being essentially a subjective matter, the Court concludes that the issue requires the further exploration that trial will provide. The trustee's motion for summary judgment is, therefore, denied.

An appropriate Order will enter.