**In re GEAUGA TRENCHING CORP., Debtor.**

**Ronald LIPSHIE, as Trustee of Geauga Trenching Corp., Plaintiff,**

**v.**

**CABLEVISION OF BROOKLINE and Cablevision Systems Corp., Defendants.**

**Bankruptcy No. 883–31386–21.**
**Adv. No. 087–0017–21.**

United States Bankruptcy Court, E.D. New York.

June 16, 1989.

Fred E. Scharf, New York City, for plaintiff.

D'Amato, Forchelli, Libert, Schwartz, Mineo & Joseph F. Carlino, Mineola, N.Y. by Marjorie E. Bornes, for defendants.

Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, Mass. by Henry A. Sullivan, for defendants.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Before the Court in this adversary proceeding brought by the Chapter 7 Trustee of the debtor's estate are two motions. The defendants are moving to compel better answers to their interrogatories and the production of documents. The plaintiff is cross-moving for partial summary judgment in the amount of $175,135.33. Both motions are being denied.

This adversary proceeding has its genesis in a construction contract entered into by Geauga Construction Company ("Geauga" or "GTC") one day before it filed a voluntary Chapter 11 petition on July 15, 1983. Cablevision of Brookline ("Brookline") is a successor in interest to the entity or entities which signed the contract with Geauga. The defendant, Cablevision Systems Corporation, now known as Cablevision Systems Services Corporation ("Cablevision" or "Systems") is alleged to share liability with Brookline because of its connection with the execution of the contract and with Brookline.

It appears to be uncontroverted that Geauga began work under the contract on August 10, 1983 and ceased performance sometime before April 12, 1984. On April 10, 1985 Geauga's Chapter 11 proceeding was converted to Chapter 7. On May 28, 1985 Cablevision, which had lent Geauga money while it was in Chapter 11, filed a claim for $56,800 representing the unpaid balance on the loan.

Under date of April 15, 1985 this Court issued an order precluding the allowance of claims not filed within 90 days. A second order was issued on March 21, 1986 directing all creditors with claims arising after July 15, 1983 to file their claims by June 13, 1986 or be forever barred from asserting any claims to funds in the possession of the Trustee or against the estate.

No claim has ever been filed by Brookline or by Cablevision except the one referred to above.

On February 25, 1987, the Trustee initiated this present adversary proceeding against Brookline and Cablevision. In general terms, the Complaint seeks damages in the amount of $1,350,000, attorney's fees and costs. Damages are predicated on (1) the failure to pay the balance due under the contract; (2) down time due to the fault of the defendants; and (3) the reduction in the scope of the work. Damages in the amount of $400,000 are asked for the failure to pay the balance due under the contract, in the amount of $500,000 for the down time and $450,000 for the reduction in the scope of the work. The causes of action against Cablevision are pleaded both as claims and counterclaims.

The complaint alleges the present proceeding to be a core proceeding falling within Subsections (A), (C) and (O) of 28 U.S.C. § 157(b)(2). The defendant's Answer describes this allegation as a conclusion of law requiring no response from the defendants.

### The Motion For Summary Judgment

Geauga has filed a Statement pursuant to Local Rule 22(b) of the United States Bankruptcy Court for the Eastern District of New York as to the materials facts as to which it contends there is no genuine issue to be tried.

Local Bankruptcy Rule 22 duplicates Rule 3(g) of the Civil Rules for the South-

ern and Eastern Districts of New York. It provides:

Upon any motion for summary judgment, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

The defendants have filed a response taking issue with some, but not all, of the statements in Geauga's Rule 22(b) statement. Geauga has filed an answer to that response. From these documents and from the pleadings it appears that the following facts are uncontroverted:

GTC (Geauga) was engaged to install the underground portion of a cable television system in the Town of Brookline, Commonwealth of Massachusetts, pursuant to a Construction Agreement ("Agreement") dated July 14, 1983.

The Construction Agreement, on Page 1 thereof, was captioned as being between GTC, as Contractor, and Times Mirror Cable Television of Brookline, Inc., a Massachusetts corporation holding the franchise for the said cable television system in Brookline, Massachusetts, as Cable Company. It was executed by GTC and by Times Mirror Cable Television, Inc., a Delaware corporation owning all the issued and outstanding capital stock of the Massachusetts corporation, (by Gilbert L. Tash, its Senior Vice President—Engineering). GTC executed the Agreement on July 14, 1983, at the Woodbury, New York, offices of the Defendant, a New York corporation then known as Cablevision Systems. Corp. but whose name was subsequently changed to Cablevision Systems Services Corp., the name by which it is now known.

Prior to GTC's execution of the Construction Agreement, Cablevision Systems Corp. specifically informed GTC of its intention and expectation, through an affiliated or related entity, to acquire the cable television franchise for the Town of Brookline from Times Mirror Cable Television of Brookline, Inc., pursuant to an agreement.

On July 22, 1983, a Certificate of Limited Partnership for the Defendant Cablevision of Brookline was filed with the Secretary of State of the Commonwealth of Massachusetts. The Certificate described the limited partnership as having been formed as of June 1, 1983 and named Charles F. Dolan as a general partner and the Managing General Partner thereof. It also named Cablevision of Boston, a Massachusetts limited partnership controlled by Charles F. Dolan, as a limited partner.

On or about July 22, 1983, a Stock Purchase Agreement was made between Times Mirror Cable Television, Inc., as the Seller of all the issued and outstanding capital stock of Times Mirror Cable Television of Brookline, Inc., and the Defendant Cablevision of Brookline, as the Buyer thereof. The Agreement contemplated the future sale of such capital stock to the Defendant. It designated the Defendant as the Seller's turnkey general contractor for the construction of the cable television system in Brookline, Massachusetts. Defendants deny that this Defendant ever operated in that capacity.

On December 28, 1983, Defendant Cablevision of Brookline acquired all the issued and outstanding stock of Times Mirror Cable Television of Brookline, Inc.; Times Mirror Cable Television of Brookline, Inc., was thereupon liquidated; and Defendant Cablevision of Brookline thereupon assumed all the rights and obligations of the liquidated corporation under the Construction Agreement.

GTC commenced its work under the Construction Agreement on August 10, 1983.

With respect to payment the contract provided:

12. Payments shall be made as follows: Contractor shall at the end of each weekly period, certify by invoice the work

completed during the immediately preceding period. Said invoice shall have coded system prints depicting each work operation being invoiced. Each individual print will be summarized. A code legend will be mutually agreed upon between Contractor and Cable Company prior to submittal of Contractor's initial invoice. Additional system prints will be provided to Contractor by Cable Company upon five (5) working days written request. The billing period shall end at the close of the last work day of the week. The amount invoiced for that portion of the system constructed during the period covered by said certified invoice shall be calculated at prices stated in Schedules A and B.

The Cable Company shall have thirty (30) days from the receipt of said notice to inspect and accept the completed System and agrees to designate a person of authority for this purpose. If no defects in material or workmanship are reported to the Contractor within the thirty (30) day period, the completed System shall be considered accepted by the Cable Company and payment of ninety (90) percent of the invoiced amount shall be made to Contractor within thirty (30) days after the receipt of the invoice. The ten (10) percent withheld will be paid to Contractor as follows. At the end of a one hundred twenty (120) day period, Contractor will invoice the Cable Company for fifty (50) percent of the withheld amount. If Cable Company has discovered no nonconformity or breaching condition, or if in the event of a breach Contractor has fully remedied such, this amount shall be paid to Contractor. At the end of a two hundred ten (210) day period the Contractor will invoice the Cable Company the balance of the withheld amount. If Cable Company has discovered no nonconformity or breaching condition, or, in the event of a breach Contractor has fully remedied such, the remainder of the amount withheld shall be paid to Contractor. In the event that defects are reported to Contractor, they shall be reported in writing and notice of final acceptance shall not be issued until all defects in such notice have been corrected to Cable Company's satisfaction. If unsatisfactory conditions are not removed within ten (10) days after written notice, Cable Company may rectify the same at Contractor's expense. The amounts so expended by Cable Company may be deducted from amounts remaining due to contractor hereunder, if any. It shall be the Contractor's responsibility to invoice the Cable Company for release of funds held for warranty purposes.

As of April 12, 1984, GTC had submitted invoices for work actually performed on the Brookline project which remained unpaid by Defendants in not less than the total sum of $535,478.24. This sum does not include the amount of $121,483.22 claimed by Defendants to be the amount of a reduction in invoiced amounts for the first ten miles of GTC's work on the project theretofore agreed to by David Dolan on behalf of GTC.

Payments aggregating $305,500.00 were made by Defendants to GTC after April 12, 1984. This reduced the unpaid invoiced amount of $535,478.24 to $229,978.24.

In or about July 1984 Cablevision paid another contractor, E.B. Rotondi & Sons $50,342.91 for restoration and replacement of the conduit and cable system on Willard Road, Brookline, allegedly necessitated by improper performance by GTC. Also, in or about July 1984 Cablevision paid $4,500 for repairs to conduit located at Cushing Road, Brookline which was damaged allegedly due to improper installation by GTC. Defendants assert these payments aggregating $54,842.91, as setoffs.

Except for the $54,842.91 allegedly expended in July 1984, Defendants have not expended, at any time from April 12, 1984 to date, any additional sums, in any amounts, for any restorative work allegedly necessitated by claimed defects in GTC's work on the Brookline project, although the defendants do contend that at some time in the future they may reasonably expect to be required to replace at least part of the existing conduit system in Brookline, at substantial cost.

**308**

When Cablevision filed its proof of claim on May 28, 1985, the defendants possessed all the information on which they now rely concerning the claims asserted herein by way of setoff; i.e., that they suffered monetary damages in some amount by reason of alleged defects in Geauga's workmanship on the Brookline project. Nevertheless, the proof of claim filed by Cablevision made no reference to any such claims.

Defendants also did not file any proof of claim or other document in response to the Bar Order of this Court entered in this case on or about March 21, 1986, which Bar Order, in material part, required "... all creditors having claims against the debtor-in-possession arising on or after July 15, 1983 ... to file claims with the Clerk of this Court on or before the 13th day of June, 1986," and which further provided that upon the failure of any such claimant to file such claim by said date, said claimant will be forever barred to file or assert any claim to funds in the possession of the trustee, or against this estate...."

The invoiced amount remaining unpaid, if there is deducted therefrom the July payments totaling $54,842.91 described above, allegedly necessitated by defects in Geauga's performance, is $175,135.33.

The defendants admit that they are holding back a balance of $175,135.33 to restore and to cover discrepancies in the work performed by GTC.

### Defendants' Contentions

The defendants claim that Geauga's work was deficient and not in accordance with the requirements of the contract; that Geauga received oral notice of its deficient work beginning in August 1983 and written notice of deficiencies at least as early as December 1983 and failed to remedy its work in violation of its contract; that Geauga's billing was not in conformance with the requirements of Section 12 of the Agreement and, therefore, Geauga cannot insist on strict adherence to its terms or benefits of Section 12; and that pursuant to Section 12 of the Construction Contract and general contract law the defendants are entitled to withhold the $175,135.33.

The defendants contend that there are issues of fact to be tried, that due to the defects in Geauga's workmanship Cablevision received a system of lesser value than it and its predecessors had bargained for and Cablevision is exposed to present and future risk of liability.

### Plaintiff's Position

Plaintiff contends that all claims for deficient work are barred by the failure to assert them through the filing of a claim in the bankruptcy proceeding. The defendants reply that they may have forfeited any right to a share in the debtor's estate but not to a setoff.

Plaintiff's motion for partial summary judgment is based squarely on the fact that the "Defendants—now for nearly five years after GTC's performance of the work in question, and for some four and a half years after the only restorative work even claimed by them to have been necessitated by GTC's allegedly poor workmanship was done and was also unilaterally charged by them against GTC—have withheld at least the said sum of $175,135.33 owing with respect to ... unpaid invoices due GTC as of April 12, 1984."

### DISCUSSION

A motion for summary judgment is governed by Bankruptcy Rule 7056 which incorporates the summary judgment rule of the Federal Rules of Civil Procedure, Rule 56. The purpose of the motion is to dispose, without a trial, of issues which can be decided upon admitted, or established, facts. 10A Wright, Miller, Kane Federal Practice & Procedure, Civ.2d s. 2712 (2d Ed.1983). The court must deny summary judgment where there is a genuine issue as to any material fact *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and grant it where there is no such issue and the movant is entitled to judgment as a matter of substantive law. *Hamilton v. Smith*, 773 F.2d 461 (2d Cir.1985). The Court's function is not to try issues of fact but to determine "whether there are issues to be tried." *Schering Corp. v. Home Insur-*

*ance Company,* 712 F.2d 4, 9 (2d Cir.1983) *quoting Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). The "key is issue-finding, not issue-resolution." *United States v. One Tintoretto Painting,* 691 F.2d 603, 606 (2d Cir.1982).

Regardless of which party bears the burden of proof at trial, in a motion for summary judgment the burden is on the movant. *In re T.I. Swartz Clothiers, Inc.,* 15 B.R. 590, 592 (Bankr.E.D.Va.1981). He has the burden of showing the absence of any genuine issue as to the material facts which entitle him to judgment as a matter of law. *Katz v. Goodyear Tire & Rubber Company,* 737 F.2d 238, 244 (2d Cir.1984) It has been said that "[a] fact is material if it tends to resolve any of the issues which have been properly raised or if their existence or non-existence might affect the result of the action." *In re Weiss–Wolf, Inc.,* 60 B.R. 969, 974 (Bankr.S.D.N.Y. 1986). In determining whether to grant a summary judgment motion, the court must resolve all doubts in favor of the party opposing the motion. *In the Matter of Iota Industries, Inc.,* 35 B.R. 693 (Bankr.S. D.N.Y.1983).

The defendants' objection that the plaintiff is relying on the affidavit of its attorney is not well grounded. His affidavit is based on the pleadings, the defendants' answers to interrogatories and exhibits produced by the defendants. All his affidavit supplies is a road map to the admissible materials in the answers to the interrogatories and in the exhibits produced by the defendants.

█ The defendants take too narrow a view of what may be considered on such a motion. The pleadings are important and are carefully perused in a Rule 56 proceeding. "[T]he Court is obliged to take account of the entire setting of the case on a Rule 56 motion. In addition to the pleadings it will consider all papers of record, as well as any material prepared for the motion that meets the standard prescribed in Rule 56(e). The Court must consider the material submitted by both of the parties, of course." 10A Wright, Miller, Kane,

Federal Practice and Procedure, Civil 2d Section 2721, pp. 44–46 (2d Ed.1983). The doctrine of judicial notice applies to motions under the Rule 56. The Court may consider anything in support of, or in opposition to, summary judgment that it may judicially notice. Exhibits that have been properly made a part of an affidavit may be considered as well as any admission by the party opposing the motion made during discovery or in briefs.

█ Although the papers put before the Court by the plaintiff are adequate to establish the facts which he deems demonstrate his right to partial summary judgment, the Court finds the facts themselves fall short of carrying the plaintiff's burden of establishing that there is no material issue of fact to be tried. The affidavits in opposition raise an issue of fact as to whether Geauga satisfied the terms of the contract or not. "[T]he standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). If Geauga did not perform as provided, it is not entitled to the contract price unless Paragraph 12 of the contract compels a different result. However, the moving papers are virtually silent with regard to Paragraph 12 and to the procedure laid down in it.

Whereas the plaintiff has not negated receiving the notices of deficiencies called for by Paragraph 12, the defendants claim that some notice was received by the plaintiff. Whether such notice satisfied Paragraph 12 or whether, as the defendants also claim, the plaintiff forfeited compliance with Paragraph 12 by itself ignoring the procedures laid down there will require a trial to resolve. The function of a motion for summary judgment is not to resolve issues but to determine if there are any such issues to be tried.

.The passage of time since Geauga ceased performance under the contract does not *ipso facto* entitle it to payment of its in-

voices. If it was not entitled to payment in 1984, it is not entitled to payment today. Whether it is or not cannot be determined on the basis of the facts not now in dispute. The facts which are in dispute are critical and require a trial.

■ The fact that Brookline filed no claim and that Cablevision filed a claim unrelated to the contract does not forfeit their right to assert claims arising out of Geauga's deficient performance as a setoff to Geauga's claim against them. Furthermore, even if those deficiencies were not available as a setoff they would be available as a defense. There can be no recovery of the contract price absent proof of performance. The defendants in a proceeding to recover the agreed-upon price for services always have the right to prove that the bargained-for performance was not delivered. Accordingly, the failure to file claims based on Geauga's allegedly defective performance constitutes no bar to the assertion of such deficiencies at trial.

### The Motion For Discovery

■ This Court recognizes that discovery should be liberally allowed, but that principle has no application to the particular discovery motion now before the Court. In this case the plaintiff has answered all the defendants' interrogatories and complied with all their requests. The defendants, nevertheless, remain dissatisfied although they in no way question that plaintiff has responded to the best of his ability. To the extent he can the plaintiff has tried to satisfy the defendants.

With respect to the production of documents the plaintiff has already advised them that he does not have the debtor's financial documents. He has agreed to provide them with a sworn statement respecting his efforts to obtain such documents. He has done as much as the defendants are entitled to demand of him. Insofar, therefore, as they are seeking to compel the production of documents or more information respecting the plaintiff's efforts to obtain possession of such documents, the motion is denied.

The defendants also are critical of the plaintiff's answer to their interrogatories respecting how the damages for reduction in the scope of the work were computed.

In his original response to the defendants' interrogatories, the plaintiff stated:

Plaintiff's information and belief is that David Dolan, the former president of GTC, who is a nephew of Charles F. Dolan, a principal of the defendants, initially furnished the $450,000 approximation of GTC's damages, on account of the reduction in scope of the work as referred to by paragraph 23 of the Complaint In Adversary Proceeding, to plaintiff's counsel, before this action was commenced, but that after doing so, for reasons unknown, David Dolan has not been available to plaintiff's counsel to provide additional information as to the details of such damages computation. Plaintiff is further informed and believes, in part based on the information furnished by Ralph Pirozzi, formerly the contract liaison officer of GTC, that such sum represents the increase in the contract price sufficient to afford GTC a reasonable margin of profit over and above all costs that it incurred on the project, assuming payment by defendants in addition thereto on account of plaintiff's claim for down time (approximately $500,000) and plaintiff's claim for work performed by GTC (approximately $400,000). In *further response*, pursuant to Rule 33(c) Fed.R.Civ.P., plaintiff will produce all responsive documents within his present custody and control, to the extent such documents exist, at such time and place as counsel for the parties agree. *Additionally, plaintiff states that investigation in this area is continuing*, which will include, among other things, *further efforts to communicate with David Dolan*, and plaintiff reserves the right to provide to defendants in further response to Interrogatory No. 18, and to offer into evidence at trial, further information and documents secured in the course of such continuing investigation. (emphasis added).

The defendants argue that this is unresponsive because (1) it does not include the

formula by which the amount claimed was arrived at, (2) the plaintiff's reliance on Rule 33 is misplaced because the documents produced, thus far, lack the information requested by the interrogatory, (3) Rule 33 states that a party may provide business records in lieu of an answer to an interrogatory only where "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served," and (4) plaintiff's response that the defendants will be able to depose the former president of the debtor is without merit because they are entitled to discover "the extent of the trustee's knowledge concerning the calculation of damages, whatever that knowledge may be," and that the trustee must solicit such information from the former employee of the debtor.

Apparently, the Trustee has given all the information he has at present. The defendants require information that the Trustee does not have. He cannot give what he does not have, no matter how many times it is requested. The Court is satisfied that he has answered the interrogatories to the best of his ability. David Dolan has been made available for examination by the defendants. The purpose of discovery is to uncover facts, not to pose insuperable barriers to the assertion of a cause of action by a trustee in bankruptcy who is necessarily handicapped by lack of first hand knowledge.

In regard to Rule 33: (1) the documents produced by the plaintiff were not "in lieu of" answers to interrogatories, they were in addition to the interrogatories. It is no greater burden for the defendants to look at the documents than for the plaintiff. It was at the defendants' own request, in a telephone conference conducted by this Court on June 23, 1988, that it was agreed that neither side would be obligated to specify which particular documents were in response to which interrogatories.

Moreover, the plaintiff has agreed to confer at the defendants' Mineola office with defendants' counsel in order to clarify and provide information on any of the documents that he has provided. Finally, the plaintiff's answer is a mirror image of the defendants' answers to the plaintiff's interrogatories. For example, see Page 40, Exhibit C of the Plaintiff's Notice of Cross Motion.

Some allowance must be paid for the fact that this action has been brought by a Trustee in bankruptcy who is a total stranger to the transactions on which the complaint is premised and who cannot necessarily count on the cooperation of the persons directly involved and who, therefore, is at a disadvantage in trying to collect the assets of the estate. The Court is satisfied that consistent with the handicaps under which he labors, the plaintiff has answered the defendants' request for documents and for information to the best of his ability. Therefore, insofar as defendants are seeking to compel further answers to their interrogatories, or further discovery, their motion is denied.

Settle Order in conformance with this Opinion.