In re BLUE POINT CARPET, INC., Debtor.

Robert L. PRYOR, Trustee of Blue Point Carpet, Inc., Plaintiff,

v.

Alan COHEN and Marilyn Blut Cohen, Defendants.

Bankruptcy No. 086–60153–21.
Adv. No. 087–0100–21.

United States Bankruptcy Court, E.D. New York.

June 19, 1989.

Abraham, Silver & Rosenberg by Jacob W. Abraham, New York City, for trustee.

Michael T. Wolin, New York City, for defendants.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

In this adversary proceeding brought on by the Trustee of the debtor, Blue Point Carpet, Inc. ("Blue Point"), against the debtor's President, Alan Cohen and his wife, Marilyn Blut Cohen, alleging various payments to them, or on their behalf, to have been preferences, or in fraud of creditors, the Trustee is moving for partial summary judgment.

This is a core proceeding. Proceedings to recover preferences and fraudulent conveyances are defined as core proceedings. 28 U.S.C. § 157(b)(2)(F) and (H). This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(b) and § 547(b) of the Bankruptcy Code.

A motion for summary judgment is governed by Bankruptcy Rule 7056 which incorporates the summary judgment rule of the Federal Rules of Civil Procedure, Rule 56. The purpose of the motion is to dispose of issues which can be decided upon admitted, or established, facts without a trial. 10A Wright, Miller, Kane Federal Practice & Procedure, Civ.2d § 2712 (2d Ed.1983). The court must deny summary judgment where there is a genuine issue as to any material fact *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and grant it where there is no such issue and the movant is entitled to judgment as a matter of substantive law. *Hamilton v. Smith,* 773 F.2d 461 (2d Cir.1985). The Court's function is not to try issues of fact but to determine "whether there are issues to be tried." *Schering Corp. v. Home Insurance Company,* 712 F.2d 4, 9 (2d Cir.1983) *quoting Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317, 1320 (2d Cir.1975). The "key is issue-finding, not issue-resolution." *United States v. One*

*Tintoretto Painting,* 691 F.2d 603, 606 (2d Cir.1982).

Regardless of which party bears the burden of proof at trial, in a motion for summary judgment the burden is on the movant. *In re T.I. Swartz Clothiers, Inc.,* 15 B.R. 590, 592 (Bankr.E.D.Va.1981). He has the burden of showing the absence of any genuine issue as to the material facts which entitle him to judgment as a matter of law. *Katz v. Goodyear Tire & Rubber Company,* 737 F.2d 238, 244 (2d Cir.1984). It has been said that "[a] fact is material if it tends to resolve any of the issues which have been properly raised or if their existence or non-existence might affect the result of the action." *In re Weiss–Wolf, Inc.,* 60 B.R. 969, 974 (Bankr.S.D.N.Y. 1986). In determining whether to grant a summary judgment motion, the court must resolve all doubts in favor of the party opposing the motion. *In the Matter of Iota Industries, Inc.,* 35 B.R. 693 (Bankr.S. D.N.Y.1983).

Section 547(b) of the Bankruptcy Code empowers a trustee to avoid certain preferential transfers of the debtor's property. It was enacted to promote the Code's policy of preserving a financially distressed debtor's estate so that the debtor's assets may be fairly distributed among all creditors, not solely to those who are favored. *See, e.g., Palmer v. Radio Corp. of America,* 453 F.2d 1133, 1136 (5th Cir.1971); *In re Bennett,* 35 B.R. 357, 360 (Bankr.N.D.Ill. 1984).

To avoid a transfer as preferential the Trustee must prove: (1) that the transfer was a transfer of the debtor's interest in property; (2) to or for the benefit of a creditor; (3) on account of the debtor's antecedent debt; (4) made during the 90 day period preceding the debtor's filing for bankruptcy relief, or if the creditor is an "insider," made within the year preceding the filing; (5) made while the debtor was insolvent; (6) which enabled the creditor to receive more than it would receive in a Chapter 7 distribution. 11 U.S.C. § 547(b). The Trustee has the burden of proof. 11 U.S.C. § 547(g). He is aided by a presumption: in an action to recover a preference the debtor is presumed to have been insolvent on, and during, the 90 days preceding the filing of the petition. 11 U.S.C. § 547(f).

A Trustee also enjoys avoiding powers with respect to fraudulent transfers. He may avoid such transfers under §§ 548 or 544. Section 548 establishes a federal law of fraudulent transfers. It spells out the transfers made within one year prior to bankruptcy which may be avoided by the trustee. Section 544 gives the trustee all the powers to avoid fraudulent transfers that an unsecured creditor enjoys under state law. Under § 544 the trustee may attack any fraudulent transfer as far back as the local Statute of Limitations permits. In the case of New York it is six years. Although the complaint invokes only Sections 547 and 548 the Trustee on the argument of the motion stated that he is also relying on Section 544 and explicitly referred to New York Debtor and Creditor Law. Section 270, *et seq.*

## BACKGROUND

Blue Point, a retail carpet dealer, was thrown into involuntary bankruptcy on March 7, 1986 when its creditors became dissatisfied with the use Blue Point was making of the insurance proceeds it had received for the damage it had sustained due to Hurricane Gloria on September 29, 1985. The schedules it subsequently filed at the direction of the Court showed liabilities far in excess of its assets.

Since the involuntary petition was filed the trustee has been investigating the financial transactions between Blue Point, on the one hand, and Alan Cohen, Blue Point's President, and his wife, Marilyn Blut Cohen, on the other. He has been handicapped by the fact that the books and records of Blue Point are no longer available. They are claimed to have been destroyed during the course of the hurricane.

The Trustee has focused his investigation on a number of transactions, all of which the complaint alleges constitute fraudulent transfers, or preferential payments, or both. The transactions in question are the purchase in 1982 by Alan Cohen and/or

Blue Point of all the stock in Blue Point held by Alvin Wilensky; the purchase on August 22, 1984 by Marilyn Cohen of a residence at 151 Oakside Drive, Smithtown, New York, for a total purchase price of $215,000 financed in part by a mortgage for $150,000 issued by the Long Island Savings Bank and the subsequent payment by Blue Point of the moneys due under the mortgage; the purchase of a Chevrolet Camaro in the name of Alan Cohen in 1984 financed through GMAC, with all payments made by Blue Point; the payments by Blue Point to various life insurance companies of premiums on policies on the life of Alan Cohen of which Marilyn Cohen is the beneficiary; and direct payments to Alan and Marilyn Cohen, including payments in the amount of $23,237.50 made to each on January 20, 1986.

The defendants, in answer to the complaint, admit that Alan Cohen is the President of Blue Point and that Marilyn Cohen is his wife. Otherwise they have filed what is, in effect, a general denial. They have also demanded a trial by jury.

The Trustee is now moving for partial summary judgment. Because of the wide range of the Trustee's moving papers, it is not altogether clear with respect to what transactions and on what theory the Trustee is moving. Reference is made in the moving papers to events occurring more than one year prior to the bankruptcy, like the purchase in August 1984 of the Smithtown house and the subsequent payments made on the mortgage, and to the repayment of the 1984 loan from Household Finance for the purchase of the stock of Alan Wilensky. These transactions are apparently being challenged as fraudulent conveyances under Article 10 of the Debtor and Creditor Law of the State of New York and therefore voidable under § 544 of the Code.[1] Nevertheless, reading the papers as a whole, the Court has concluded that transactions taking place more than one

year prior to the debtor's bankruptcy lie outside the scope of the motion. The Court agrees with the defendants' statement:

> With respect to the purchase of the house of Marilyn Cohen on August 22, 1984, although discussed at length in the trustee's motion, it is apparently not the subject of the summary judgment motion. This also applies to the provision [sic] of the stock interest by [sic] Alvin Wilensky by Alan Cohen in the debtor corporation.

(Defendant's Rule 3 Statement, p. 3)

As the Court stated on the record, it is confining itself to consideration of the availability of summary judgment with respect to the payments made to, or for, the benefit of Alan and Marilyn Cohen during the year preceding the filing the petition in bankruptcy.

Rule 3(g) of the Civil Rules for the Southern and Eastern Districts of New York which is duplicated by Local Bankruptcy Rule 22, provides:

> Upon any motion for summary judgment, there shall be annexed to the notice of motion a separate short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. All material facts set forth in the statement require to be served by the moving party shall be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

The Trustee has filed a statement pursuant to Rule 3 to which the defendants have replied, taking issue with some, but not all, the recitals of facts in the Trustee's Statement.

1. New York law makes a conveyance fraudulent regardless of intent if made without a fair consideration (1) by a person who is, or will be thereby rendered, insolvent or (2) when the property remaining in the hands of the person making the conveyance constitutes an unreason-ably small capital for the business in which the person is engaged or (3) when the person making the conveyance intends, or believes, he will incur debts beyond his ability to pay as they mature. *McKinneys* (1986) Debtor and Creditor Law, §§ 273, 274, 275.

Because the Trustee's 3(g) statement is so lengthy and contains so much more than a recital of the material facts, the Court has relied on it only to the extent that it is supported by the pleadings, by the defendants' admissions in their depositions, in their affidavits, and in their bankruptcy schedules and by the moving affidavits and the exhibits attached thereto.

The Trustee has submitted two affidavits by his attorney, Jacob W. Abraham, Esq., which quote from the many depositions that he has taken of the two defendants. To these affidavits are attached a number of exhibits, including pleadings, copies of checks, communications from the attorney for the defendants respecting withdrawals from Blue Point's account and statements from recipients of moneys from Blue Point based on their books and records.

The defendants object to these affidavits as insufficient to support a motion for summary judgment because made by an attorney. Bankruptcy Rule 7056 makes FRCP 56 applicable in adversary proceedings. Paragraph (e) of Rule 56 stipulates that affidavits "should be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The defendants contend that Mr. Abraham is not writing from personal knowledge. But the fact that Mr. Abraham is an attorney, does not disqualify him from submitting an affidavit in support of the Trustee's motion for summary judgment. His affidavit is probative to the extent it is made on personal knowledge, sets forth facts that would be admissible and shows affirmatively that the affiant is competent to testify to the matters stated therein. As attorney for the Trustee, Mr. Abraham is competent to testify with respect to what were the proceeds, if any, of the assets listed in the debtor's schedules and as to what money is currently available for distribution to unsecured creditors. Otherwise, all his affidavit supplies is a road map to the admissible materials in the various depositions and exhibits relied on by the trustee in support of his motion.

The defendants take too narrow a view of what may be considered on such a motion. The pleadings are important and are carefully perused in a Rule 56 proceeding. "...The Court is obliged to take account of the entire setting of the case on a Rule 56 motion. In addition to the pleadings it will consider all papers of record, as well as any material prepared for the motion that meets the standard prescribed in Rule 56(e). The Court must consider the materials submitted by both parties, of course," 10A Wright, Miller, Kane, Federal Practice and Procedure, Civil 2d Section 2721, pp. 44–46 (2d Ed.1983). The doctrine of judicial notice applies to motions under the Rule 56. The Court may consider anything in support of, or in opposition to, summary judgment that it may judicially notice. Exhibits that have been properly made a part of an affidavit may be considered as well as any admission by the party opposing the motion made during discovery or in briefs. Rule 56 expressly provides that the Court may make use of depositions on a summary judgment motion.

The uncontroverted facts relied on by the Trustee are drawn from a variety of sources: the pleadings; the admissions in depositions of the defendants; the admissions in the affidavits opposing the motion for summary judgment; the affidavits of the attorney for the Trustee and the exhibits attached to these affidavits, including copies of filed claims and statements based on the books and records of subpoenaed recipients of payments from the debtors; the debtor's schedules sworn to by Alan Cohen, its President and its income tax returns.

Indeed the affidavits submitted by the defendants in opposition to the Trustee's motion almost alone establish the absence of any material issue of fact regarding the reception by them of preferences during the 90 days preceding the filing of the involuntary petition against Blue Point.

## THE FACTS

The following material facts are all uncontroverted:

From 1976 when Blue Point was started until Hurricane Gloria on September 29, 1985, Blue Point was a functioning carpet business. For the fiscal year July 1, 1984 to June 30, 1985, a period ending three months before Hurricane Gloria, its gross sales were $660,000; its gross profit was $207,447 (Affidavit in Opposition of Alan Cohen, pp. 2, 3 (hereinafter "A. Cohen Aff.")) and its net loss was $61,395 (A. Cohen Aff., Exh. B).

Blue Point's tax return for that period reflects a debt due loans from shareholders of $56,483. (A. Cohen Aff., Exh. B) The defendant Alan Cohen was its sole shareholder at the time. He has testified that this was the amount of money due him on that date from Blue Point.

Blue Point's business was halted by Hurricane Gloria on September 29, 1985. The storm ripped the roof off the building in which the business was housed and caused severe water damage to the interior of the store and to Blue Point's inventory of carpets and other material. Blue Point did not resume business following the hurricane and the retail store it operated on the premises was never reopened. (Plaintiff's Rule 3(g) Statement, p. 2 (hereinafter "P. Rule 3(g)")).

In payment for the loss of the contents of the store Blue Point received $125,000 from Continental Insurance Company ("Continental"), $50,000 on November 13, 1985 and $75,000 on January 9, 1986. (A. Cohen Aff., p. 4).

Out of these moneys Blue Point paid Alan Cohen $23,237.50 on January 20, 1986 and paid Marilyn Cohen a like amount the same day. The defendants claim that the payment to Alan Cohen was for salary due and to Marilyn Cohen for services rendered to Blue Point as an independent contractor. (A. Cohen Aff., p. 4).

Prior to 1985 the defendant Alan Cohen received a salary of $1,000 weekly (Deposition of Alan Cohen, December 17, 1986, Tr. p. 14); for the calendar year 1985 Alan Cohen drew no salary. (Id. at p. 25). He claims that at the beginning of 1985, after reviewing matters with Blue Point's accountant, he determined to take no salary

during the calendar year but to be paid at the end of the year, as opposed to weekly, at the rate of $500 per week. (Id. at p. 26).

Mrs. Marilyn Cohen allegedly rendered various services to Blue Point over a period of time. She claims that on, or about, January 20, 1986, she agreed with her husband and Blue Point's accountant that she would receive $500 a week for her services during 1985. (Deposition of Marilyn Cohen, May 25, 1988, Tr., pp. 47–49).

Withholding taxes were paid by Blue Point on the payments made Alan Cohen and Marilyn Cohen. Blue Point's tax return for 1986 shows total wages and tips paid of $50,390, on which it paid taxes of $7,050. (A. Cohen Aff., Exh. B).

In addition to the money paid Marilyn Cohen on January 20, 1986, she received a check for $1,000 on November 15, 1985, a check for $300 on December 12, 1985 and for $200 on December 13, 1985. Between July 5, 1985 and December 13, 1985, she received, in all, checks totaling $3,250 in addition to the check for $23,237.50 received as salary. (Abraham Aff., Exh. J).

Other moneys were paid out by Blue Point for the benefit of Alan and/or Marilyn Cohen.

Blue Point made all the mortgage payments on the mortgage from the Long Island Savings Bank which had financed the purchase in 1984 of the house at 151 Oakside Drive, Smithtown, New York, to which title had been taken in the name of Marilyn Cohen. Between March 12, 1985 and February 25, 1986 Blue Point paid Long Island Savings Bank $40,716.54. Of this figure $13,724.58 was paid out during the ninety days preceding the filing of the bankruptcy petition. (Abraham Aff., Exhs. A & C).

It is the position of the defendants, and sworn to by Alan Cohen, that the "payment by Blue Point to Long Island Savings was actually a payment of loans Blue Point owed [him]." According to Alan Cohen's affidavit it was partial payment of the amount shown as owed him on Blue Point's tax return for June 30, 1985. His affidavit asserts:

... Instead of Blue Point writing me a check for moneys owed and then depositing it in my personal account and my then writing a check to Long Island Savings, it was just written directly.

(A. Cohen Aff., p. 8; Abraham Aff., pp. 20–22)

In 1984 Alan Cohen purchased a Chevrolet Camaro taking title in his own name and financing the car through General Motors Acceptance Corporation ("GMAC"). All payments on the car were made by Blue Point. The monthly payments were in the sum of $475.16. In the one year prior to the filing of the petition in bankruptcy the payments made on the Camaro totaled $5,701.92. Of this total $1,425.48 was paid within the ninety days immediately preceding the filing of the petition. (Deposition of Alan Cohen, December 17, 1986, Tr. pp. 36–39 and Deposition of Alan Cohen, May 25, 1988, pp. 36–40; Abraham Aff., Exh. A).

In the year preceding the filing of the bankruptcy petition, Blue Point paid the following amounts on policies covering the life of Alan Cohen of which Marilyn Cohen was the beneficiary:

| | |
|---|---|
| William Penn Life Insurance | $189.66 |
| National Benefit Life Insurance | 210.42 |
| Chubb LifeAmerica | 207.58 |

(Abraham Aff., Exhs. F, G & H)

Of these totals the following amounts were paid in the ninety days preceding the filing of the petition:

| | |
|---|---|
| National Benefit Life | 109.72 |
| Chubb LifeAmerica | 103.79 |

It is the position of the defendants that, exactly like the payments to Long Island Savings Bank, the payments for the Camaro and the life insurance policies were in discharge of an antecedent indebtedness to Alan Cohen.[2] (A. Cohen Aff., p. 8).

The bankruptcy schedules filed by Blue Point, signed by Alan Cohen, showing the financial position of Blue Point as of March 7, 1986, listed liabilities of over $300,000 and assets, including a claim against Continental for business interruption, of less than $50,000.

The Trustee does not have on hand sufficient moneys to pay, in full, the claims filed in this proceeding. Indeed, there is no possibility of any distribution to unsecured creditors from the assets presently on hand. There will only be a distribution to unsecured creditors if the Trustee is able to secure a judgment against Alan Cohen and his wife in this proceeding. (Abraham Aff., p. 25).

## DISCUSSION

The present motion rests on the theory that all payments made to, or on behalf of, Alan or Marilyn Cohen during the one year preceding the filing of the petition were preferential payments on which the Trustee is entitled to summary judgment. The payments as to which the Trustee seeks summary judgment are those made directly to Alan Cohen and to Marilyn Cohen, those made to the Long Island Savings Bank on account of the mortgage on the home in the name of Marilyn Cohen, those made to General Motors Acceptance Corporation ("GMAC") on account of the Chevrolet Camaro titled in Alan Cohen's name, and the payments made to various insurance companies on the life of Alan Cohen. It is the Trustee's position that these were all payments made to an insider on account of an antecedent debt, made while the debtor was insolvent and which enabled Alan and Marilyn Cohen to receive more than they would receive if payment were made to them in the normal course of the Chapter 7.

That the payments were made is not disputed. Further the Trustee, in describing them as made on account of antecedent indebtedness, is merely accepting the contention of the defendants, although he ap-

---

**2.** The only payments which the defendants have not claimed to be in payment of an antecedent indebtedness are the checks issued to Marilyn Cohen for various round sums during the year preceding bankruptcy. The papers submitted to the Court on this motion contain no detail concerning them. The papers do not disclose whether they were received for contemporaneous services, in payment of an antecedent indebtedness or without any consideration whatsoever. Unless they were in payment of an antecedent indebtedness they cannot be challenged as preferential and in the absence of any knowledge as to what consideration, if any, supported them, summary judgment cannot be awarded as to them as fraudulent conveyances.

pears to be doing so only for purposes of this motion since his papers intimate that there are serious questions as to whether the claimed indebtedness did, in fact, exist. However, to recover the payments made Alan and Marilyn Cohen as preferences it is necessary to accept their contention that the consideration for the moneys made available to them by Blue Point was a pre-existing indebtedness.

Alan Cohen's affidavit in opposition to the Trustee's motion reads in·part:

... Blue Point paid to me for salary due me $23,237.50 on January 20, 1986 and Marilyn received the same amount for services she rendered to Blue Point as an independent contractor.  (p. 4)

The payment by Blue Point to Long Island Savings was actually a payment of loans Blue Point owed me.

... Therefore instead of Blue Point writing me a check for moneys owed and then depositing it in my personal account and my then writing a check to Long Island Savings, it was just written directly.

Although this was poor bookkeeping, it was clearly not fraud or any attempt on my part to bankrupt Blue Point.  This similarly applies to payments made to William Penn Life Insurance, National Benefit Life Insurance, Chub LifeAmerica and the Chevrolet Camaro.

Marilyn Cohen stated that she fully concurs in the statements made by her husband in his affidavit.  (M. Cohen Aff., p. 1).

Further, the amount of the payments are not in dispute, they are established by the advice the attorney for the trustee has received from the attorney for the defendants and from each of the payees.

There is likewise no question but that the defendants are insiders as defined in Section 101(30), (39) of the Code since the pleadings admit that Alan Cohen is the debtor's sole stockholder and president, and Marilyn Cohen is his wife.

Similarly there is no room for dispute that these payments enabled these preferred creditors to receive more than will Blue Point's other unsecured creditors who, based on what the Trustee has been able to collect to date, will receive nothing. Indeed, the Trustee was required to do no more than show that other creditors are receiving less than 100% of their claims. The law in this connection is well settled:

[A]s long as the distribution in bankruptcy is less than one-hundred percent, *any* payment "on account" to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payments not been made.  *See Id.* [*Palmer Clay Products Co. v. Brown,* 297 U.S. 227, 229, 56 S.Ct. 450, 450, 80 L.Ed. 655 (1936)]; *Barash v. First Galesburg National Bank,* 658 F.2d 504, 508–09 (7th Cir.1981); *In re Saco Local Development Corp.,* 30 B.R. 862, 865–66 (Bankr.D.Me.1983); *In re Utility Stationery Stores, Inc.,* 12 B.R. 170, 179 (Bankr.N.D.Ill.1981).

*In re Lewis W. Shurtleff, Inc.,* 778 F.2d 1416, 1421 (9th Cir.1985) (emphasis in original).

The defendants' opposition to the Trustee's motion focuses on the requirement that for a transfer to be a preference it has to be made while the debtor was insolvent. They oppose partial summary judgment on the ground that there is an issue of material fact as to whether Blue Point was insolvent during the critical period.

Under the definitions in the Bankruptcy Code, a debtor is "insolvent" when "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation."  11 U.S.C. § 101(26).

Two time periods are relevant in this case: The full year available to set aside preferences paid an "insider" and the ninety day period preceding bankruptcy during which the debtor is presumed to be insolvent.  The Trustee contends that during the entire year during which preferential payments made to insiders are vulnerable, the debtor was insolvent.  Because no books or records of the debtor corporation are available as proof of insolvency, he must rely on the various isolated known facts with respect to Blue Point's financial condition.  Thus, his attorney argued:

I submit that various things that are not reflected in the liabilities of the debtor and the assets of the debtor, as were found as of the time of the filing of the involuntary petition in bankruptcy reflect what could have happened as of March 7, 1985 [March 7, 1985 is one year before the filing of the involuntary petition]. I show the disparity there, if it please the Court, of the $254,114.56 in excessive liabilities shown in the schedules as of March 7th [1986]. I bring that back to December 7th [The 90 day presumption of insolvency]. I show there was no business done from September 29th, the day of the hurricane. From there I go on to June 30, 1985 which I show that there was according to them the deficit or loss of $61,395 in the operation of their business.

With what I have already shown there, in addition to the assets that were taken out by the payment of $40,000, the payment of the $46,000 to the husband and wife—the payment for the car and all that—that there couldn't have been the solvent condition as of the beginning of the year. Particularly, I add, the $26,000 that should have been on the books if they had an agreement to pay the $500 weekly at the end of the year. It either should have been 26,000 or it should have been $50,000 which would have been the obligation to pay to the end of the year. As of June 30th [1985] it was $26,000. Those things all added together showed that there could not possibly have been a solvent condition of the debtor as of March 7, 1985, and, on that basis, I respectfully submit that the payments made to or for the benefit of the debtor, either to his wife or to the Long Island Savings Bank or to both of them, particularly the payments of the $23,237.50 made within two months prior to the filing of the petition—the payments made for the car, the $13,000 paid during the three month period to the Long Island Savings Bank—all those go to show what was being taken by the debtor from assets that properly should belong to the creditors.

(Transcript, 3/23/89, pp. 35–37)

Continuing with his argument, he pointed out that despite the $125,000 paid by Continental to Blue Point between December 1985 and January 1986, Blue Point was left in the deficit position shown on the schedules.

... You cannot possibly account for a solvent condition when you run that back through December 7th of 1985 through September 29th, the hurricane [after] which no business was done, through the June 30th statement which showed a deficit position of $61,395 and then from June 30th to March 7th. There couldn't have been any kind of a solvent position that left the debtor at the time of March 7, 1986 with an excess of liabilities over assets of some $200,000 thousand odd dollars, almost $254,114.56, without including the $40,000, without including the payments for the vehicle, without including the payments of the insurance premiums, without including other payments that were made during the period of that year, that I reflect in the papers.

(Tr. 3/23/89, p. 38) (Edited to eliminate errors in transcription).

■ Persuasive as this argument is, it is not sufficient to establish the absence of any material issue as to Blue Point's solvency, or insolvency, for the entire year preceding the filing of the involuntary petition. The purpose of a motion for summary judgment is not to resolve issues of fact, but to determine that none exist.

■ Except for the three month period during which the trustee is aided by the statutory presumption of insolvency the figures he has put before the Court, and the other facts, do not carry his burden on the issue of insolvency so as to entitle him to summary judgment. That evidence may be sufficient to permit a decision in his favor at trial.[3] The Court is expressing no

---

**3.** Bankruptcy schedules may be retrojected where there is evidence that the debtor's financial condition changed very little between the transfer date and the date of the petition in bankruptcy. The schedules are not dispositive but they are probative evidence. *Braunstein v.*

opinion on that issue. All it is holding at the present time is that the materials placed before the Court fall short of establishing that there is no material issue of fact to try as to the solvency, or insolvency, of the debtor during the portion of the year lying outside the 90 days immediately preceding the filing of the petition.

The situation is very different with respect to the 90 day period during which the Trustee has the benefit of the presumption of insolvency. The defendants, while maintaining that there is a material issue of fact even during this period have pointed to no facts to meet the presumption except that the debtor had substantial gross sales for the period ending June 30, 1985. First, this was almost a half year before the 90 day period began, second, the sales were made at a net loss of over $60,000. The 1985 figures, therefore, reinforce, rather than controvert, the presumption of insolvency. In the absence of evidence to meet or rebut the presumption of insolvency, the Trustee is entitled to prevail. *In re Emerald Oil Co.*, 695 F.2d 833, 838 (5th Cir. 1983).

Although the Trustee did not need to do so, he has not simply rested on the presumption of insolvency. He has shown that on September 29, 1985 Hurricane Gloria seriously damaged the debtor's place of business, ruining its inventory to the point where it was able to collect $125,000 for the damage done, that the debtor never resumed business, that indeed its owners believed the debtor entitled to $150,000 compensation for the interruption of its business, that the debtor never replaced the lost inventory, that it used the money received to pay its pre-existing debts, and that its liabilities exceeded its assets on March 7, 1986 by at over $200,000, and that despite having received $125,000 from the insurance company in payment of its claims the debtor had no cash, no physical assets other than two cars, no inventory, and only one worthless accounts receivable. Thus all the known facts reinforce the presump-

tion of insolvency. But it is unnecessary to look to the facts since the defendants have introduced nothing to meet the presumption and thereby create a material issue of fact requiring trial.

The schedules, of which the Court can take judicial notice, clearly show insolvency as of the date of the filing of the petition in bankruptcy. They show liabilities of $303,-714.56 and assets of only $49,600. Even if the assets are increased by the value which the defendants now attribute to Blue Point's claim against Continental Insurance Company for interruption of business, to which Blue Point attributed a value of $34,-000 on its schedules but which the defendants now claim to have had a value of $150,000, Blue Point's liabilities still exceeded its assets by over $150,000. Thus, on the present record there is no material issue of fact but that the debtor was insolvent on March 7, 1986 and for the preceding 90 days.

Accordingly, the Trustee is entitled to partial summary judgment as to all payments made to Alan Cohen for salary, to Marilyn Cohen for services, or made for the benefit of Alan Cohen in partial discharge of an alleged antecedent debt owed him by Blue Point during the period December 16, 1985 to March 7, 1986.

Just as the existence of a material issue of fact as to solvency, or insolvency, during the year preceding the filing of the involuntary petition lying outside the 90 day period covered by the presumption precludes summary judgment on the theory that the payments are recoverable as preferences so do issues of fact likewise preclude summary judgment on the theory that they were fraudulent conveyances. Summary judgment is available only for the three months during which the Trustee has the benefit of the presumption of insolvency.

## CONCLUSION

The Trustee is entitled to judgment against Marilyn and Alan Cohen for all moneys paid to or for their benefit by Blue

---

*Massachusetts Bank and Trust Co.*, 443 F.2d 1281, 1284 (1st Cir.1971); *Hassan v. Middlesex County National Bank*, 333 F.2d 838, 840 (1st

Cir.1964), *cert. denied* 379 U.S. 932, 85 S.Ct. 332, 13 L.Ed.2d 344 (1964).

Point on or after December 6, 1985, up to the date the petition was filed, consisting of the following payments:

Payment made directly to Alan Cohen on January 20, 1986 in the amount of $23,237.50.

Payment made directly to Marilyn Cohen on January 20, 1986 in the amount of $23,237.50.

Payments made the Long Island Savings Bank in the amount of $13,724.58.

Payments made GMAC on the 1984 Chevrolet Camaro in the amount of $1,425.48.

Payments made National Benefit Life Insurance Company in the amount of $109.72.

Payments made Chubb LifeAmerica in the amount of $103.79.

All these payments were made on account of an antecedent indebtedness while the debtor was insolvent which enabled the recipients to receive more than other creditors will receive.

Settle Judgment.