**In re Roger K. QUADE and Brenda D. Quade, Debtors.**

**Larry S. EIDE, Trustee, Plaintiff,**

**v.**

**The UNITED STATES of America Acting Through the FARMERS HOME ADMINISTRATION, UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant.**

**Bankruptcy No. 86–01549M.**
**Adv. No. X88–0024M.**

United States Bankruptcy Court,
N.D. Iowa.

Aug. 11, 1989.

Martin McLaughlin, Asst. U.S. Atty., Cedar Rapids, Iowa, for defendant.

Larry S. Eide, Mason City, Iowa, Special Trustee.

MEMORANDUM AND ORDER RE:
PREFERENTIAL TRANSFER·

WILLIAM L. EDMONDS, Bankruptcy
Judge.

The matter before the court is the plaintiff-trustee's complaint which requests the court to avoid a transfer of a real property interest from the debtors to FmHA. An order denying the plaintiff's motion for summary judgment and the defendant's motion for judgment on the pleadings was issued on May 19, 1989. A trial was held in Mason City, Iowa on July 11, 1989.

The court, having considered the evidence and arguments, now issues its ruling which shall constitute findings of fact and conclusions of law pursuant to Bankr.R. 7052. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## FINDINGS OF FACT

The court hereby incorporates the facts set forth in its Order Re: Plaintiff's Motion for Summary Judgment; Defendant's Motion for Judgment on the Pleadings issued May 19, 1989.

In addition, the court finds the following facts:

Dennis Kooyman has been the FmHA county supervisor in Charles City since November, 1983 and was the county supervisor at the time of the alleged preferential transfer.

In May, 1986 the debtors contacted FmHA and requested FmHA to release its mortgage lien on debtors' 70 acres located in the southwest quarter of Section 26. The debtors wanted the lien released so that they might sell the property to Glenn Brickman and remit the $70,000.00 in proceeds to Federal Land Bank of Omaha (FLB). The debtors made an application to FmHA for partial release on May 7, 1986. FmHA district director John H. Duesbury rejected the application.

In June, 1986, the debtors again asked FmHA to release real estate. This time the debtors requested a mortgage release on 80 acres located in the southwest quarter of Section 26. The debtors intended to sell 70 acres to Brinkman and ten acres to

Harvey Hilgendorf and to remit $80,000.00 in sales proceeds to FLB. The application for partial release was executed by the debtors on June 13, 1986. This application was recommended by Kooyman and approved by District Director Duesbury.

The debtors wanted to sell to Brinkman since he would allow the debtors to continue to farm the land and to reside in the homestead.

In exchange for the release on the 80-acre parcel, FmHA received a second priority mortgage on debtors' 40-acre tract described as the South Half of the North Half of the Southeast Quarter of Section 25. FmHA had not had a lien on this parcel. FmHA had told the debtors that it would not release the security unless it received compensation for the release. Kooyman thought there would be sufficient value in 120 of the debtors' 160 acres to satisfy Federal Land Bank's liens. FmHA did not want FLB to settle its debt with the debtors by liquidating all of the property mortgaged to FmHA without looking first to the 40 acres upon which only FLB had a lien. In order to avoid being "frozen out" by FLB, FmHA agreed to release its interest in the 80 acres in Section 26 if the debtors would give it a mortgage on the 40 acres previously unencumbered by FmHA.

The debtors agreed and granted FmHA a mortgage on the 40 acres on June 11, 1986. The mortgage was recorded on June 12, 1986. The debtors sold the 80-acre parcel to Brinkman and Hilgendorf on June 6, 1986. FmHA did not complete its paper work approving release of the lien on the 80 acres until June 18, 1986. There was no evidence as to when a release was filed with the county recorder.

## DISCUSSION

FmHA agrees that the debtors' transfer of a mortgage to FmHA meets all of the elements for a preferential transfer set forth in 11 U.S.C. § 547(b). FmHA argues, however, that because new value was given for the debtors' transfer of mortgage, the trustee may not avoid this transfer.

The trustee may not avoid a transfer under 11 U.S.C. § 547 if the transfer was an element of a substantially contemporaneous exchange for new value. 11 U.S.C. § 547(c)(1). In its order of May 19, 1989, the court concluded that FmHA's release of the mortgage on the 80 acres was "new value" under 11 U.S.C. § 541(c)(1)(A) and (B). The court also found that the exchange was one of substantially equivalent values. The court determined that the release of the FmHA mortgage on 80 acres and the debtors' granting of the new mortgage on the 40 acres did not deplete the estate, but rather merely changed the positions of the creditors on the same real estate. *Eide v. FmHA (In re Quade)*, 108 B.R. 674 (Bankr.N.D.Iowa, 1989). In its order, the court concluded that there was insufficient evidence before it as to whether the granting of the new mortgage and the release of the old was a "substantially contemporaneous exchange", and whether it was intended by the debtors as such. These were the remaining fact issues upon which trial was held.

FmHA recorded its new mortgage on the 40 acres on June 12, 1986. The release of its mortgage on the 80 acres was not approved by FmHA until June 18, 1986. Therefore, there was a period of six days between the time of the transfer to FmHA and the approval of the release of the mortgage on the 80 acres. FmHA argues that the parties intended the exchange to be contemporaneous and that the exchange was in fact substantially so.

In order for the § 547(c)(1) exception to apply, the parties must not only intend a contemporaneous exchange for new value, but the exchange must in fact be substantially contemporaneous. *In re Barr v. Reneau (In re Lyon)*, 35 B.R. 759, 761 (Bankr.D.Kan.1982).

The determination of whether the parties intended a transaction to be a contemporaneous exchange is a question of fact in each case. *In re T.I. Swartz Clothiers, Inc.*, 15 B.R. 590, 592 (Bankr.E.D.Va.1981). There are no objective standards for determining when an exchange is in fact substantially contemporaneous and the court is required to consider all of the surrounding facts. *In re Arnett*, 731 F.2d 358, 362–63 (6th Cir.1984).

The court finds that the debtors and FmHA intended the transfer of the mortgage on the 40–acre parcel in exchange for a release of the mortgage on the 80–acre parcel to be a contemporaneous exchange. The facts indicate that the debtors were intent on selling the 80–acre tract. The buyer would allow the debtors to continue residing on the homestead portion and to farm the remaining land. The debtors wished to continue farming until they were able to sell their other 80–acre tract and liquidate their operation. FLB and the debtors were under a time constraint in order to prevent the loss of a buyer, and the parties wished to sell the property as soon as possible because a crop had not yet been planted.

The debtors approached FmHA about releasing its security on the 70 acres which they wished to sell. FmHA refused the first offer of partial release as it did not believe the debtors would have a viable farming operation if the property was sold. Debtors again approached FmHA and asked FmHA what it would take to release its security on an 80–acre tract. FmHA said that it would have to be compensated for the release of the security. FmHA thought it had equity in its resultant property interest since FLB could satisfy its obligation by first selling property in which FmHA did not have a second lien. Eventually, the parties agreed that FmHA would be given a mortgage on the 40–acre parcel in exchange for FmHA's release of its security on the 80 acres. The facts indicate that FmHA and the debtors intended the transfer of the mortgage on the 40 acres in exchange for a release on the 80 acres to be contemporaneous.

Was it substantially so? Yes. FmHA filed its mortgage on the 40 acres on June 12, 1986. Debtors had executed it the day before. The release of its mortgage on the 80 acres was approved by FmHA on June 18, 1986. Therefore, there was a period of six days between the transfer of the mort-

gage and the written agreement to release. The transfer and the release did not take place simultaneously. However there is no specific requirement that the transfer or exchange be made simultaneously. Courts have found that twenty days between transfers is contemporaneous. *Jahn v. First Tennessee Bank of Chattanooga (In re Burnette)*, 14 B.R. 795 (Bankr.E.D.Tenn. 1981). A time lag of six days between the granting of the mortgage and the agreement to release of the security on the 80 acres does not prevent the transfer from being a "substantially contemporaneous exchange." It appears that FmHA orally agreed to the release prior to June 18, 1986, but that the paper work was not completed by FmHA until that date.

The court concludes that the trustee may not avoid the transfer since it was intended by the parties to be a contemporaneous one for new value and in fact was a substantially contemporaneous exchange for new value. *Michalski v. State Bank & Trust (In re Taco Ed's, Inc.)*, 63 B.R. 913, 921 (Bankr.N.D.Ohio 1986).

### CONCLUSIONS OF LAW

The transfer between FmHA and the debtors is not avoidable by the trustee under 11 U.S.C. § 547(b) because the transfer was intended by the parties to be a contemporaneous exchange for new value and was in fact a substantially contemporaneous exchange for new value under 11 U.S.C. § 547(c)(1).

### ORDER

IT IS ORDERED that plaintiff Eide's complaint to avoid the transfer between FmHA and the debtors is dismissed.

SO ORDERED.